**Kenneth Shaye ERVIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–10–00054–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 10, 2010.

Discretionary Review Refused
Feb. 16, 2011.

Kenneth Goode, Houston, TX, for Appellant.

David C. Newell, Assistant District Attorney, Patricia R. Lykos, Harris County District Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, ALCALA, and HIGLEY.

**OPINION**

ELSA ALCALA, Justice.

Appellant, Kenneth Shaye Ervin, appeals from a judgment sentencing him to life in prison for the murder of Quincy Sheppard. *See* Tex. Penal Code Ann. § 19.02(b) (Vernon 2003). In two issues, appellant contends that the evidence is legally and factually insufficient to support his conviction for murder. Concluding the evidence is sufficient, we affirm.

**Background**

Ronald and Quincy Sheppard lived at their father's apartment in southeast Houston. At the time, Ronald was making a lot of money selling illegal drugs around the apartment complex, and appellant's cousin did not want Ronald around. One evening in April 2008, the Sheppard brothers walked on the street outside their apartment complex when appellant and appellant's cousin directed vulgar words at them. Appellant then pulled out a black, semiautomatic gun and fired approximately six bullets towards the Sheppard brothers as they ran away.

About two days later, the Sheppard brothers went outside their apartment complex to deliver illegal drugs to a customer. Appellant and his cousin ran up to them. Appellant pointed the same gun at them and demanded, "Give me the money and the marijuana." Ronald complied. As the Sheppard brothers were leaving, appellant fired approximately five bullets at them. The brothers again escaped uninjured.

Approximately two days after the theft, as the Sheppard brothers walked back to their apartment at night, Ronald looked back and saw appellant holding the same gun at his side. Appellant said, "Don't run now." Ronald tapped on Quincy's shoulder, instructing him to run away. Ronald then ran inside his father's apartment, where he heard the sound of two gunshots fired outside.

At the same time, Walter Dixon was outside the apartment complex and heard the gunshots. Dixon saw appellant quickly walking away from where the sound of the

gunshot originated. Dixon saw appellant attempting to conceal something, which Dixon thought was a gun, in his pants. Dixon perceived appellant to be panicked and in a hurry. When Dixon asked him, if he was okay, appellant answered, "No," and left.

After hearing the gunfire, Ronald went to Quincy and stood nearby screaming, yelling, and crying hysterically. Ronald told the police officers who arrived at the scene that appellant shot Quincy. The police found Quincy lying unconscious on the ground; he had been shot in the arm and the chest and was pronounced dead at the scene. The police recovered two fired .40 caliber cartridge casings from the crime scene. In the subsequent investigation, police officers recovered two .40 caliber bullets from appellant's girlfriend's apartment. This was the same caliber as the casings found at the scene of the shooting and the bullet fragments later recovered from Quincy's body.

The day after Quincy's death, Dixon saw appellant. Appellant, who was with a couple of his friends, called Dixon to come over. Appellant instructed one of his friends to "[a]sk [Dixon] about it." By "it," Dixon understood appellant to be referring to the prior night's shooting. Dixon offered, "I don't know nothing, and you shouldn't be talking about it."

In the days shortly after the shooting, Dixon was interviewed by the police, but he did not mention either seeing appellant on the night of the shooting or the conversation that occurred the day after. Earning a reward for the tip, Dixon later contacted Crime Stoppers to report that he saw appellant on the night of the shooting. Approximately two years later, in the week before trial, Dixon met with the prosecutor and disclosed for the first time the conversation with appellant that occurred the day after the shooting.

At trial, Dixon identified appellant as the man he saw leaving the crime scene on the night of the shooting. Dixon testified that he knew appellant as "Teardrop." Appellant has a tattoo of teardrops near his left eye. At trial, Ronald also identified appellant as the shooter. He testified that he knew appellant as "Ken Ken." Appellant, whose first name is Kenneth, has a tattoo on his left bicep that states, "Ken Ken hearts Arneshia."

Appellant pleaded not guilty. The jury found him guilty, found true a felony enhancement paragraph, and assessed his sentence. Appellant filed a motion for new trial, which was overruled by operation of law.

### Sufficiency of the Evidence

In two issues, appellant contends that the circumstantial evidence is legally and factually insufficient to support his conviction for murder. In his combined argument concerning both issues, appellant points out that there was no direct evidence, such as an eyewitness's testimony, that he fired the two bullets that killed Quincy. Appellant does not separately argue his legal- and factual-sufficiency challenges.

### A. Standard of Review

■ In light of the recent court of criminal appeals decision in *Brooks v. State*, we must determine what standard of review we will apply to an evidentiary-sufficiency challenge styled as a factual-sufficiency challenge. *See Brooks v. State*, 323 S.W.3d 893, 894–913 (Hervey, J., joined by Keller, P.J., and Keasler and Cochran, JJ., plurality opinion), 323 S.W.3d at 912–26 (Cochran, J., joined by Womack, J., concurring), 323 S.W.3d at 926–32 (Price, J., joined by Meyers, Johnson, and Holcomb, JJ., dissenting) (Tex.Crim.App. Oct. 6, 2010). Of the three opinions issued in

*Brooks,* no opinion was joined by a majority of the judges. *Id.* When an appellate court decides a case without issuing a majority opinion providing a single rationale explaining the result, the majority holding is the position taken by those members who concurred in the judgment on the narrowest grounds. *Haynes v. State,* 273 S.W.3d 183, 186 (Tex.Crim.App.2008) (quoting *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977)). In *Brooks,* a majority of judges joined either the plurality or the concurring opinion. *See Brooks,* 323 S.W.3d at 894–95, 912–13. Accordingly, the narrowest ground on which they agree constitutes the *Brooks* majority holding. *See Haynes,* 273 S.W.3d at 186.

In *Brooks,* the plurality and the concurrence both agreed to overrule the court of criminal appeals' prior holding in *Clewis v. State* that had applied separate standards of review for legal and factual sufficiency of the evidence challenges. *Brooks,* 323 S.W.3d at 894–95, 913–15. In *Clewis,* the court held that legal-sufficiency challenges are to be reviewed in the light most favorable to the verdict under the standard of review established by *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), but that factual-sufficiency challenges are to be reviewed under a different, neutral, standard. *Clewis v.*

*State,* 922 S.W.2d 126, 132, 134 (Tex.Crim. App.1996), *overruled by Brooks,* 323 S.W.3d 893.[1] The plurality and concurring opinions in *Brooks* agree that the *Jackson* standard of review is the sole standard to be used for challenges concerning the sufficiency of the evidence to support each element of the offense and that a finding of insufficiency results in an order acquitting the appellant. *See Brooks,* 323 S.W.3d at 912–13, 917–18, 922–24, 926–28 [2]; *see also Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982). This majority holding is the precedent of the court of criminal appeals. *See Haynes,* 273 S.W.3d at 186.

 As an intermediate court of appeals, we are bound to follow the precedent of the court of criminal appeals. *Purchase v. State,* 84 S.W.3d 696, 701 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd); *See* Tex. Const. art. V, § 5(a) (court of criminal appeals is final authority for criminal law in Texas). Although an intermediate appellate court's decision "shall be conclusive on all questions of fact brought before them on appeal or error," the court of criminal appeals has the authority to determine questions of law, including the standard of review that an intermediate appellate court must use in conducting factual review. *See* Tex. Const. art. V, § 6(a)

1. Under the *Clewis* standard of review, evidence was considered to be factually insufficient to support a verdict if, considering all the record evidence in a neutral light, (1) the evidence supporting the verdict is "too weak" to support the factfinder's verdict, or (2) considering conflicting evidence, the factfinder's verdict is against the great weight and preponderance of the evidence. *Laster v. State,* 275 S.W.3d 512, 518 (Tex.Crim.App.2009) (appellate court finds evidence factually insufficient only when necessary to prevent manifest injustice); *see also Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996), *overruled by Brooks v. State,* 323 S.W.3d 893 (Tex. Crim.App.2010). A determination of insuffi-

ciency under the *Clewis* standard results in a new trial but under the *Jackson* standard results in an order of acquittal. *Clewis,* 922 S.W.2d at 133–34; *see Tibbs v. Florida,* 457 U.S. 31, 41–42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982).

2. The *Brooks* concurrence noted that that the factual-sufficiency standard announced in *Meraz v. State,* 785 S.W.2d 146, 154–55 (Tex. Crim.App.1990), is nevertheless appropriate for review of issues, such as affirmative defenses, on which the defendant has burden of proof by preponderance of evidence. *See Brooks,* 323 S.W.3d at 924–26.

(providing for questions of fact to be resolved by intermediate appellate courts); *Roberts v. State*, 221 S.W.3d 659, 663 (Tex. Crim.App.2007).[3] Determining that the *Clewis* standard should no longer be applied to review the factual sufficiency of the evidence, the Texas Court of Criminal Appeals establishes the *Jackson* standard for the review of factual-sufficiency challenges. *See Brooks*, 323 S.W.3d at 912–13, 926–28.[4] We are bound to follow the *Brooks* majority holding, and we, therefore, apply the *Jackson* sufficiency standard of review to complaints styled as legal or factual sufficiency challenges concerning the elements of a criminal offense. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. "It bears emphasizing that a rigor-

ous and proper application of the *Jackson v. Virginia* legal-sufficiency standard is as exacting a standard as any factual-sufficiency standard (especially one that is 'barely distinguishable' or indistinguishable from a *Jackson v. Virginia* legal-sufficiency standard)." *Brooks*, 323 S.W.3d at 906.

■ Under the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *In re Winship*, 397 U.S. 358,

3. Although it recognized that intermediate courts of appeal have conclusive fact jurisdiction under the Texas Constitution, the plurality opinion in *Brooks* explained that the court of criminal appeals has the exclusive authority to set the standard of review for those factual determinations that are done by intermediate courts. *Brooks*, 323 S.W.3d at 911; *see* TEX CONST. art. V, § 5(b). The plurality opinion quotes the following from the *Clewis* majority opinion:

> Appellate fact jurisdiction ... should not be confused with the appellate standard of review required to exercise that fact jurisdiction. The state constitution, at most, says that an intermediate appellate court has conclusive fact jurisdiction in both civil and criminal cases. It does not purport to set out the standard of review required to exercise that fact jurisdiction.

*Brooks*, 323 S.W.3d at 911 (quoting *Clewis* [*v. State*], 876 S.W.2d [428] at 431 [Tex.App.-Dallas 1994]). We express no opinion concerning the viability of a challenge on the basis that the use of the *Jackson* sufficiency standard to conduct a factual-sufficiency review violates the Texas Constitution's requirement that the decision by intermediate courts of appeal "shall be conclusive on all questions of fact brought before them on appeal or error." *See* TEX. CONST. art. V, § 6(a).

4. We do not agree with recent intermediate courts of appeals decisions that suggest that

the review of factual-sufficiency challenges is abolished after *Brooks*. *See e.g., Hammons v. State*, No. 06–10–00026–CR, 2010 WL 4241577, at *1 n. 2 (Tex.App.-Texarkana Oct. 22, 2010, no pet. h.) ("Since the Texas Court of Criminal Appeals has abolished factual sufficiency review, we need not address the defendant's challenge(s) to the factual sufficiency of the evidence."); *Gainey v. State*, No. 08–08–00239–CR, 2010 WL 4259366, at *2 (Tex. App.-El Paso Oct. 27, 2010, no pet. h.) ("A factual sufficiency review is no longer appropriate...."); *Castillo v. State*, No. 08–08–00332–CR, 2010 WL 4117674, at *4 (Tex. App.-El Paso Oct. 20, 2010, no pet. h.) (purporting to follow *Brooks* by not "addressing the merits of [a]ppellant's factual insufficiency argument"). We agree with the intermediate courts of appeals that have applied the *Jackson* standard of review to sufficiency challenges styled as factual-sufficiency challenges. *See e.g., Rosales v. State*, —— S.W.3d ——, —— (Tex.App.-San Antonio 2010, no pet. h.) ("Based on *Brooks*, we will review the evidence in a light most favorable to the verdict for Rosales's [legal and factual] sufficiency claims."); *Joaquin v. State*, No. 05–09–00730–CR, 2010 WL 4244823, at *3 (Tex.App.-Dallas Oct. 28, 2010, no pet. h.); *Pomier v. State*, 326 S.W.3d 373, 378 (Tex.App.-Houston [14th Dist.] 2010, no pet. h.); *Winningham v. State*, No. 02–07–00389–CR, 2010 4138564, at *18 (Tex.App.-Fort Worth Oct. 21, 2010, no pet. h.); *Walker v. State*, 327 S.W.3d 790, 792 (Tex.App.-Fort Worth 2010, no pet. h.).

361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970); *Laster v. State,* 275 S.W.3d 512, 517 (Tex.Crim.App.2009); *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App. 2007). Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson,* 443 U.S. at 314, 318 n. 11, 320, 99 S.Ct. at 2786, 2789 n. 11, 2789 ("That the *Thompson* [*v. Louisville,* 362 U.S. 199, 206, 80 S.Ct. 624, 629, 4 L.Ed.2d 654 (1960),] 'no evidence' rule is simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt is readily apparent. A mere modicum of evidence may satisfy a 'no evidence' standard.... But it could not seriously be argued that such a 'modicum' of evidence could by itself rationally support a conviction beyond a reasonable doubt.") (citations omitted); *Laster,* 275 S.W.3d at 518; *Williams,* 235 S.W.3d at 750. A hypothetical example of this second circumstance was described in *Brooks:*

> The store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. It was within the jury's prerogative to believe the convenience store clerk and disregard the video. But based on *all* the evidence the jury's finding of guilt is not a rational finding.

*Brooks,* 323 S.W.3d at 907 (quoting *Johnson v. State,* 23 S.W.3d 1, 15 (Tex.Crim. App.2000)) (McCormick, P.J., dissenting) (emphasis in original).

▮ If an appellate court finds the evidence insufficient under the *Jackson* standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs,*

457 U.S. at 41, 102 S.Ct. at 2218. An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *See Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim. App.2007). In viewing the record, "[d]irect and circumstantial evidence are treated equally: 'circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Id.* (quoting *Hooper v. State,* 214 S.W.3d 9, 16–17 (Tex.Crim.App.2007)). An appellate court presumes that the factfinder resolved any conflicting inferences in favor of the verdict and defers to that resolution. *See Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793; *Clayton,* 235 S.W.3d at 778. An appellate court also defers to the factfinder's evaluation of the credibility of the evidence and weight to give the evidence. *See Williams,* 235 S.W.3d at 750.

**B. Applicable Law to Establish Murder**

▮ A person commits murder if (1) he commits an act that causes the death of another, and (2) he intended or knew that death would result from the act, or he intended that serious bodily injury would result from the act and the act is clearly dangerous to human life. Tex. Penal Code Ann. § 19.02(b)(1)-(2). Proof of a defendant's motive to commit the charged offense is significant circumstantial evidence indicating guilt. *See Guevara v. State,* 152 S.W.3d 45, 50 (Tex.Crim.App.2004).

**C. Analysis**

▮ As emphasized by the *Brooks* plurality, we conduct "a rigorous and proper application" of the *Jackson* standard of review to determine whether the facts in the record are sufficient to establish murder beyond a reasonable doubt. *See*

*Brooks*, 323 S.W.3d at 905–07; *Pomier v. State*, 326 S.W.3d 373, 378 (Tex.App.-Houston [14th Dist.] 2010, no. pet. h.). The record includes circumstantial evidence linking appellant to the offense as well as evidence of his motive to kill appellant. Appellant does not challenge the evidence establishing his identity as the person who twice shot at the Sheppard brothers, nor as the person seen holding a gun immediately before Quincy was shot. Rather, his sole challenge concerns the evidence linking him to Quincy's death.

Immediately before Quincy was shot, Ronald saw appellant holding the same gun that appellant had previously used to shoot at him and Quincy. Appellant told the Sheppard brothers not to run. When Ronald escaped into the safety of his father's apartment, he heard two gunshots fire outside. Ronald quickly went outside where he saw Quincy, who had been shot twice.

A second witness, Dixon, also provides circumstantial evidence that appellant shot Quincy. Dixon heard the gunshots and saw appellant walking from where the sound originated. Dixon thought appellant looked panicked as he attempted to conceal what Dixon believed to be a firearm. The day after the shooting, appellant spoke with Dixon in the presence of appellant's friend. Appellant told his friend to ask Dixon about "it," which Dixon believed referred to the shooting. Furthermore, Quincy was killed with a firearm that used .40 caliber ammunition, and that type of ammunition was found in appellant's girlfriend's apartment.

Although appellant contends that the record does not show that he had a motive to murder Quincy, that is an inaccurate portrayal of the circumstances. The jury could have rationally found that appellant had a motive to kill Quincy from the evidence that he fired at Quincy on two occasions during the week before Quincy was shot to death. *See Foy v. State*, 593 S.W.2d 707, 709 (Tex.Crim.App.1980) (evidence of prior offense committed against victim indicates existence of ill will or hostility towards victim and is circumstantial evidence of existence of motive for committing charged offense); *Burton v. State*, 762 S.W.2d 724, 727 (Tex.App.-Houston [1st Dist.] 1988, no pet.).

Viewing the totality of the circumstances in the light most favorable to the verdict, we conclude that the jury could have rationally found each element of murder was proven beyond a reasonable doubt. *See Clayton*, 235 S.W.3d at 779–81 (although insufficient standing alone, considered together circumstantial evidence that appellant was at crime scene moments after murder occurred, fled the crime scene, and had motive was sufficient under *Jackson* standard to establish guilt beyond reasonable doubt). Having applied the *Jackson* evidentiary-sufficiency standard of review to address appellant's legal- and factual-sufficiency challenges, we hold the evidence is sufficient to establish murder. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Williams*, 235 S.W.3d at 750.

## Conclusion

We affirm the judgment.

Justice JENNINGS, concurring.

TERRY JENNINGS, Justice, concurring.

*[T]he decision of [Texas Courts of Appeals] shall be conclusive on all questions of fact brought before them on appeal or error.*

TEX. CONST. art. V, § 6(a).

As noted by the majority, five judges on the Texas Court of Criminal Appeals, in two separate opinions, have now concluded that in criminal cases "a legal-sufficiency

[appellate] standard [of review] is 'indistinguishable' from a factual-sufficiency [appellate] standard" of review. *Brooks v. State*, 323 S.W.3d 893, 901 (Tex.Crim.App. 2010) (Hervey, J., joined by Keller, J., Keasler, J., and Cochran, J.); *see id.* at 912–28 (Cochran, J., joined by Womack, J., concurring) (overruling use in criminal cases of factual-sufficiency appellate standard of review, which was consistent with Texas Supreme Court precedent and articulated in *Clewis v. State*, 922 S.W.2d 126, 134–36 (Tex.Crim.App.1996)).

The five judges purport to substitute a legal-sufficiency appellate standard of review in place of a factual-sufficiency appellate standard of review.[1] *Brooks*, 323 S.W.3d at 894–95 (holding that legal-sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) is "only standard" reviewing court should apply in determining whether evidence is sufficient to support each element of criminal offense). Asserting that the "two standards *have become* essentially the same standard and that there is no meaningful distinction between them that would justify *retaining them both*," the five judges purport to eliminate from Texas's criminal jurisprudence the

---

1. An appellate standard of review is the gauge by which an appellate court determines whether a trial court has erred in making a legal ruling or a fact finder has made an erroneous finding. Our appellate standards of review "frame the issues, define the depth of review, assign power among judicial actors, and declare the proper materials to review." Steven A. Childress, *A 1995 Primer on Standards of Review in Federal Civil Appeals*, 161 F.R.D. 123, 126 (1995).

Standards of review are, in effect, checks on an appellate court's power because an intellectually honest adherence to them restrains, in a very real way, the actions of the appellate court. They "distribute power within the judicial branch by defining the relationship between trial and appellate courts." W. Wendall Hall, *Standards of Review in Texas*, 34 ST. MARY'S L.J. 1 (2002). Given the fact that Texas judges are politically selected, either by election or appointment, our standards of review serve to uphold the doctrine of stare decisis, help keep our laws predictable, and protect litigants against arbitrary appellate rulings and their consequences. A proper respect for and adherence to the appropriate standard of review will keep appellate judges intellectually honest and true to their oath to "preserve, protect, and defend the Constitution and laws of the United States and of this State."

It must be stressed, however, that the use of a standard of review does not reduce the art and craft of judging into a mathematical-type formula. In discussing a "formula" for judicial review of administrative actions, Justice Felix Frankfurter wrote:

Some scope for judicial discretion in applying the formula can be avoided only by falsifying the actual process of judging or by using the formula as an instrument of futile casuistry. It cannot be too often repeated that judges are not automata. *The ultimate reliance for the fair operation of any standard is a judiciary of high competence and character and the constant play of an informed professional critique upon its work....* There are no talismanic words that can avoid the process of judgment. The difficulty is that we cannot escape, in relation to this problem, the use of undefined defining terms.

*Universal Camera Corp. v. Nat'l Lab. Relations Bd.*, 340 U.S. 474, 489, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951) (emphasis added). This admonition applies to the use of appellate standards of review. As courts work to discern the meaning of certain "undefined defining terms," they must exercise sound judgment in the application of these terms. The appropriate standard of review, therefore, is not "the end of the inquiry but rather a frame and limit on the substantive law." 1 Steven Alan Childress & Martha S. Davis, *Standards of Review: Federal Civil Cases and Review Process* § 1.3, at 21 (1986).

Even though a standard of review is not an outcome-determinative formula, the bottom line is that the appropriate standard of review, and an appellate court's intellectually honest adherence to it, can generally determine the outcome of an appeal.

factual-sufficiency appellate standard of review. *Id.* (emphasis added). An unintended consequence of this, which is not addressed by the five-judge majority in either of their opinions, would be to prohibit Texas courts of appeals in criminal cases from actually deciding questions of fact, which by their very nature require a Texas court of appeals to consider and weigh all the evidence in a trial record and, if appropriate, reverse the judgment of a trial court and remand for a new trial. It would confine the courts of appeals to addressing the purely legal question of whether the evidence, when not weighed, but rather when viewed in the light most favorable to the prosecution, is legally sufficient to support a criminal conviction. Thus, it would render the factual-conclusivity clause, quoted above, in Article V, section 6 of the Texas Constitution a dead letter in criminal appeals.

This, respectfully, the Texas Court of Criminal Appeals has neither the jurisdiction nor any lawful authority to do. In fact, three years prior to issuing its opinion in *Clewis*, the court itself acknowledged that it simply may not order Texas courts of appeals to use a legal-sufficiency appellate standard of review to decide the questions of fact brought before them on appeal. *Ex parte Schuessler*, 846 S.W.2d 850, 852 (Tex.Crim.App.1993). Recognizing that it may not "interfere[ ] with the fact jurisdiction of the intermediate appellate courts," the court emphasized that it is "not constitutionally authorized to adopt a standard of review for the court[s] of appeals ... *inconsistent* with Art. V, § 6 of [the Texas] Constitution." *Id.* at 853 (emphasis added) (quoting *Meraz v. State*, 785 S.W.2d 146, 153 (Tex.Crim.App.1990)). Any such action taken by the court of criminal appeals is, in its own words, "void *ab initio*," i.e., from its inception. *Ex parte Schuessler*, 846 S.W.2d at 852–53.

In granting a post-conviction application for writ of habeas corpus, the court explained:

In the instant case, this Court erroneously held that a legal sufficiency standard of review, rather than a factual sufficiency review, was the proper appellate standard for determining the sufficiency of the evidence.... Ordinarily, such a holding, even though subsequently held to be erroneous, would not be subject to review.[ ] However, *our holding was not just erroneous; it was made without jurisdiction.*

. . . .

The Court of Appeals applied the appropriate standard and reversed applicant's conviction. This Court *lacked jurisdiction* to hold otherwise.... Because this Court was without jurisdiction to reverse the judgment of the Court of Appeals, *our judgment in this case is void ab initio,* and therefore properly challenged in this collateral attack. *See Ex Parte Kirby*, 626 S.W.2d 533, 534 (Tex. Cr.App.1981) ("judicial action without jurisdiction is void and challengable [sic] by way of a post-conviction application for writ of habeas corpus").

*Id.* (emphasis added).

According to the court, the only way to preclude a Texas court of appeals from "determin[ing] if a jury finding is against the great weight and preponderance of the evidence," i.e., determining a question of fact, is for "the people of the State of Texas to amend the Constitution." *Meraz*, 785 S.W.2d at 154. Of course, neither the Texas Court of Criminal Appeals, nor the Texas Supreme Court, nor this Court has the power to amend the Texas Constitution.

In Texas, "[t]he right to trial by jury shall remain inviolate." TEX. CONST. art. I, § 15. Trial by jury is, in the words of Blackstone, the "palladium" of public jus-

tice and the institution best "adapted and framed for the investigation of truth." 3 WILLIAM BLACKSTONE, COMMENTARIES 355 (The Legal Classics Library Special Edition 1765–1769); 4 WILLIAM BLACKSTONE, COMMENTARIES 343 (The Legal Classics Library Special Edition 1765–1769). However, the fact that a party to a lawsuit, including an accused in a criminal case, has exercised that right by insisting upon a jury trial does not preclude him from challenging as erroneous a fact finding on appeal. Jurors, like judges, are human, not infallible, and may be subject to manipulation. Indeed, in Blackstone's time, "[f]ictitious verdicts were common." DANIEL J. BOORSTIN, THE MYSTERIOUS SCIENCE OF THE LAW 147 (University of Chicago Press 1996 (1941)). As explained by Justice Felix Frankfurter:

> Trial by jury as guaranteed by the Constitution of the United States and of the several states presupposes a jury under proper guidance of a disinterested and competent trial judge.... It is an important element of trial by jury which puts upon the judge the exacting duty of determining whether there is solid evidence on which a jury's verdict could be fairly based.... Only an incompetent or a wil[l]ful judge would take a case from the jury when the issue should be left to the jury ... The easy but timid way out for a trial judge is to leave all cases tried to a jury for jury determination, but in doing so he fails in his duty to take a case away from the jury when the evidence would not warrant a verdict by it. A timid judge, like a biased judge, is intrinsically a lawless judge.

*Wilkerson v. McCarthy*, 336 U.S. 53, 64–65, 69 S.Ct. 413, 419, 93 L.Ed. 497 (1949) (Frankfurter, J., concurring) (citations omitted).

Although the right to trial by jury is indeed the bulwark of our liberties, no one has ever seriously argued that juries *always* "get it right," even when there is, at a bare minimum, legally-sufficient evidence to support their verdict. Even today, the reality is that there are individuals who have been convicted by juries of criminal offenses with legally-sufficient evidence only to be later exonerated after spending a considerable amount of time in prison. Thus, an additional judicial check, as contemplated in the factual-conclusivity clause, on a jury's authority to decide questions of fact is not inappropriate and serves to further protect against wrongful conviction. In fact, the Texas Legislature has expressly directed, consistent with the factual-conclusivity clause, that Texas courts of appeals "may reverse the judgment in a criminal action ... upon the facts." TEX.CODE CRIM. PROC. ANN. art. 44.25 (Vernon 2006) (entitled, "Cases Remanded").

As early as 1841, the Supreme Court of the Republic of Texas recognized that "the defendant in a criminal prosecution in the district court has the right of appeal to this court from the judgment, or sentence of the court below, and *to have the facts* as well as the law, at his own election, *opened for re-examination.*" *Republic v. Smith*, Dallam 407, 410–11 (Tex.1841) (emphasis added). Texas has always recognized that a party on appeal may challenge as erroneous a fact finding on the grounds that, (1) as a question of law, the issue should not have been submitted to the jury at all, i.e., the evidence is legally insufficient to support the finding, or, (2) as a question of fact, although the issue was properly submitted to the jury with legally-sufficient evidence, the jury erred in weighing the evidence, i.e., the evidence is factually insufficient to support the finding. *See Choate v. San Antonio & A.P. Ry. Co.*, 91 Tex. 406, 44 S.W. 69 (1898).

In regard to appellate challenges based on the factual insufficiency of the evidence, the factual-conclusivity clause provides in no uncertain terms that:

[T]he decision of [Texas Courts of Appeals] shall be *conclusive* on all questions of fact brought before them on appeal or error.

Tex. Const. art. V, § 6(a) (emphasis added). The original intent of the drafters of the clause is clear. The clause "requires" that Texas courts make a "distinction" between questions of law and questions of fact. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 621 (Tex.2004). And the Texas Supreme Court has long recognized that its purpose is "to *restrict, in express terms*, the jurisdiction of the supreme court, and *to confine it to questions of law.*" *Choate*, 44 S.W. at 69 (emphasis added). Although the courts of appeals have very rarely and "reluctantly exercised" their power to reverse trial-court judgments and remand cases for a new trial based upon the factual insufficiency of the evidence, "it is the right and duty of the court [of appeals] to set aside a verdict, when it is against such a preponderance of the evidence that it is clearly wrong." *Mo. Pac. Ry. v. Somers*, 78 Tex. 439, 14 S.W. 779, 779 (1890).

In *Choate*, the court noted that in concluding that the then court of civil appeals had erred in holding that there was no evidence to support a jury verdict in favor of the plaintiff and in instructing the trial court to direct a verdict for the defendant, the supreme court had "neither exceeded [its] powers nor intrenched upon the jurisdiction of the [then] court of civil appeals...." 44 S.W. at 69. The court explained:

[I]t is elementary that whether there be any evidence or not to support an issue is a question of law, and not of fact, and it follows that the decision of the [then]

court of civil appeals upon such a question is subject to review by this court. *Id.* In contrast, although it is the province of the jury to determine questions of fact, "it is in the power of the trial judge to set aside the finding, and to award a new trial." *Id.* A court of appeals "has the same power upon appeal." *Id.* Thus, if a verdict is "against such a preponderance of the evidence as to justify such action," a court of appeals may "set it aside, and remand the cause for a new trial." *Id.* at 70. And the court of appeals' "action upon such questions *is made final,* and not subject to be reviewed by [the supreme] court." *Id.* (emphasis added). As recently recognized by the court of criminal appeals, "The Factual Conclusivity Clause gives *final appellate jurisdiction* to the court of appeals on questions of fact brought before the court." *Laster v. State*, 275 S.W.3d 512, 518–19 (Tex.Crim. App.2009) (emphasis added).

Thus, "a review of the evidence for factual sufficiency is a power committed *exclusively* to the court[s] of appeals." *Regal Fin. Co. v. Tex. Star Motors*, —— S.W.3d ——, —— (Tex.2010) (emphasis added). Accordingly, in regard to the questions of fact presented to a Texas court of appeals, the supreme court and court of criminal appeals have jurisdiction *only* to determine the purely legal question of whether the court of appeals did its job in addressing a question of fact by actually considering and weighing all of the evidence in the record and, if it judges the evidence factually insufficient to support a finding of fact, stating its reasons for doing so. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633–35 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). In other words, did the court of appeals apply the correct standard of appellate review by considering "*all* the relevant evidence" in addressing

the question of fact presented on appeal. *Laster*, 275 S.W.3d at 518–19; *Cain v. State*, 958 S.W.2d 404, 408 (Tex.Crim.App. 1997) (emphasis added).

In *Meraz*, the Texas Court of Criminal Appeals, six years before issuing its opinion in *Clewis*, expressly recognized that Texas courts of appeals have "conclusive fact jurisdiction." *Meraz*, 785 S.W.2d at 154. The court "join[ed] ... the Texas Supreme Court and conclude[d] that the 'factual conclusivity clause,' within Art. V, § 6, operates to limit our jurisdiction and confers conclusive jurisdiction on the courts of appeals *to resolve questions of weight and preponderance of the evidence* ...." *Id.* (emphasis added). Although it addressed the issue in the context of a defendant's affirmative defense, the court stated that its conclusion was "dictated by stare decisis" because it had, seventeen years prior to issuing its opinion in *Clewis*, recognized that it had "no jurisdiction" to consider, as requested by a defendant, whether "the jury's decision regarding his claim of incompetency was 'so contrary to the great weight and preponderance of the evidence as to be manifestly wrong [and] unjust.' " *Id.* at 155 (citing *White v. State*, 591 S.W.2d 851, 854 (Tex.Crim.App.1979)). In *White*, Presiding Judge Onion, writing for the court, stated, "This court has *no jurisdiction* to do what the [defendant] requests" because the factual-conclusivity clause precluded it from doing so. 591 S.W.2d at 855 (emphasis added). The court, in *Meraz*, explained:

> Any reading of the quoted language [from *White* ] makes it obvious that this Court has expressly recognized that the then courts of civil appeals *had the jurisdiction to consider the great weight*

*and preponderance of evidence questions.* Moreover, the Court *expressly recognized that such jurisdiction was exclusively with the courts of civil appeals* to the exclusion of the Supreme Court. In addition, it endorsed the Supreme Court's opinions which interpreted Art. V, § 6, in that manner.

> Obviously *White v. State* ... preceded the constitutional amendment that conferred criminal jurisdiction upon the courts of civil appeals and made them courts of appeals.... However, considering that the constitutional amendment did not in any manner affect that portion of Art. V, § 6, which grants the authority to conduct a· factual review of the evidence, it is apparent that the Court's observations and conclusions cannot and should not be altered and thus constitute stare decisis.[2]

785 S.W.2d at 155 (citations omitted) (emphasis added).

Thus, when a Texas court of appeals, pursuant to its constitutionally-delineated duty under the factual-conclusivity clause, and its statutorily-delineated duty under Code of Criminal Procedure article 44.25, entitled "Cases Remanded," decides a question of fact brought before it on appeal, it necessarily must, at the very least in its scope of review, neutrally consider and weigh all the evidence in the record to determine whether the challenged fact finding is erroneous. *See In re King's Estate*, 244 S.W.2d at 661. The court of criminal appeals has specifically recognized that "the phrase 'question of fact,' " as used in the factual-conclusivity clause, is "a legal term of art signifying 'questions of weight and preponderance of the evidence.' " *Cain*, 958 S.W.2d at 408. This is

---

**2.** To the extent that *White* was based on the presumption that the factual-conclusivity clause was an affirmative grant of power to the courts of civil appeals, rather than a re-striction on the power of the higher court, that view was expressly rejected in *Meraz v. State*, 785 S.W.2d 146, 155 (Tex.Crim.App. 1990).

axiomatic; it is what deciding a question of fact is about:

> The question requires the [court of appeals], in the exercise of its peculiar powers under the constitution ... *to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial* [if appropriate] ... regardless of whether the record contains some 'evidence of probative force' in support of the verdict. ... *The evidence supporting the verdict is to be weighed along with the other evidence in the case,* **including that which is contrary to the verdict.**

*In re King's Estate,* 244 S.W.2d at 661 (emphasis added). Indeed, it is reversible error for a Texas court of appeals to "treat[ ] [a factual sufficiency challenge] as a question of law" and not to consider and weigh all the evidence when deciding a question of fact. *Id.* How could a court of appeals ever decide a question of fact and remand a case for a new trial pursuant to its duties under the Texas Constitution and article 44.25 if it is limited to reviewing the legal sufficiency of the evidence?

A legal-sufficiency analysis, which limits the scope of review to the evidence in the record in the light most favorable to the finding and stands in stark contrast to a factual-sufficiency analysis, does not require such a consideration and weighing of all the evidence, *including that which is contrary to the verdict.* As revealed in the following chart, which is based on the scholarly work of W. Wendall Hall and former First Court of Appeals Justice Michol O'Connor, the two different analyses serve two different functions, answer two separate sets of questions, and lead to two dramatically different results:

## STANDARDS OF REVIEW

| Legal Insufficiency | |
| --- | --- |
| **No Evidence** | **As a Matter of Law** |
| *Applies When* | *Applies When* |
| Challenging party did *not* have burden of proof | Challenging party *did* have burden of proof |
| *Standard of Review* | *Standard of Review* |
| Complete absence of evidence; only evidence cannot be given weight by rules of law or of evidence, or no more than a scintilla | No evidence supports failure to find, and evidence conclusively establishes desired finding |
| *Scope of Review* | *Scope of Review* |
| Review the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not | Review only evidence and reasonable inferences that tend to support the failure to find and disregard all evidence and inferences to the contrary THEN review all other evidence to determine if it meets the above standard |
| *Result of Sucessful Challenge* | *Result of Sucessful Challenge* |
| Rendition of Judgment (Acquittal) | Rendition of Judgment (Acquittal) |

| Factual Insufficiency | |
| --- | --- |
| **Insufficient Evidence** | **Against the Great Weight and Preponderance** |
| *Applies When* | *Applies When* |
| Challenging party did *not* have burden of proof | Challenging party *did* have burden of proof |
| *Standard of Review* | *Standard of Review* |
| Evidence to support the finding is so weak that finding is clearly wrong and manifestly unjust | Great weight of evidence is so contrary that failure to find is manifestly unjust |
| *Scope of Review* | *Scope of Review* |
| Consider and weigh *all* evidence in record, including evidence contrary to fact finding | Consider and weigh *all* evidence in record, including evidence contrary to fact finding |
| *Result of Sucessful Challenge* | *Result of Sucessful Challenge* |
| Remand for new trial | Remand for new trial |

W. Wendell Hall, *Standards of Review in Texas,* 38 St. Mary's L.J. 47, 265 (2006). As recent as last year, the court of criminal appeals explained:

> We have stated "that determining the legal and factual sufficiency of the evidence requires the implementation of *separate and distinct standards.*"[ ] Courts and litigants should not combine their legal and factual sufficiency analyses. So while we recognize that any analyses of the facts in a given case will naturally overlap, a separate review under the applicable standard is necessary to ensure that the law was properly applied.

*Laster,* 275 S.W.3d at 519 (quoting *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App. 2000)) (emphasis added).

The legal-sufficiency standard of review as articulated by the United States Supreme Court in *Jackson v. Virginia,* which provides the minimum protection against wrongful conviction required by the Due Process Clause of the United States Constitution, is articulated differently than the Texas legal-sufficiency standard outlined above. Under the *Jackson* standard, a court is to examine "the evidence in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3] 443 U.S. at 318–19, 99 S.Ct. at

---

**3.** As noted in the chart above, the pertinent appellate standard of review in a case neces-

2788–99. Nevertheless, the *Jackson* legal-sufficiency standard cannot be mistaken for a factual-sufficiency standard because the scope of review under *Jackson* is limited to the evidence viewed "in the light most favorable to the prosecution," i.e., the evidence is not weighed, and a successful challenge under *Jackson* results in an acquittal and not a new trial. *Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982). Also, the *Jackson* standard does not implicate a Texas court of appeals' constitutional duty to decide questions of fact by considering and weighing all the evidence in a record because "it impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. And the question whether the evidence is legally sufficient under *Jackson* "*is of course wholly unrelated to the question of how rationally the verdict was actually reached* .... [T]he standard announced today ... does not require scrutiny of the reasoning process" used by the fact-finder. *Id.* at 319 n. 13, 99 S.Ct. at 2789 n. 13 (emphasis added).

The consequences surrounding the prosecution of an accused based on legally-insufficient evidence have been clearly explained by the United States Supreme Court:

[T]he Double Jeopardy Clause precludes retrial [of an accused] "once the reviewing court has found the evidence legally insufficient" to support conviction.... This standard, we explained, "means that the government's case was so lacking that *it should not have even been submitted* to the jury." ... A conviction will survive review ... whenever "the evidence and inferences therefrom *most favorable to the prosecution* would warrant the jury's finding the defendant guilty beyond a reasonable doubt." ... In sum, we noted that the rule barring retrial would be "confined to cases where the prosecution's failure is clear."

...

[T]he Double Jeopardy Clause attaches special weight to judgments of acquittal.... A verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial.... A reversal based

---

sarily depends upon which party had the "burden of proof" at trial, for example, the State's burden to prove its allegations "beyond a reasonable doubt." However, a party's "burden of proof" at trial need not and should not be confused or conflated with the pertinent *factual*-sufficiency appellate standard of review. The "burden of proof," the duty "to prove a disputed assertion or charge" at trial, includes both (1) a "burden of production" and (2) a "burden of persuasion." BLACK'S LAW DICTIONARY 191 (7th ed. 1999). The "burden of persuasion" is the duty of a party "to convince the fact finder to view the facts in a way that favors that party." *Id.* The "burden of production" is the duty of a party to "introduce enough evidence on an issue to have the issue decided by the fact-finder" so as to survive against "a summary judgment or a directed verdict," i.e., the duty to present legally-sufficient evidence. *Id.* It may not be inappropriate to incorporate the

pertinent burden of proof, which includes the *legal question* of whether a party has met its burden of production, into a *legal*-sufficiency appellate standard of review as did the United States Supreme Court in *Jackson*. However, the question on appeal of whether evidence is *factually* sufficient to support a finding necessarily presumes that the pertinent burden of proof was met at trial, i.e., the evidence is legally sufficient to support the finding. Accordingly, regardless of the actual burden of proof at trial, the pertinent question in a factual-sufficiency review, depending on who had that burden, is either (1) whether the evidence in support of the challenged finding is so weak that the finding is clearly wrong and manifestly unjust or (2) whether the great weight of the evidence is so contrary to challenged finding that the fact finder's failure to find in favor of the challenging party is manifestly unjust. W. Wendell Hall, *Standards of Review in Texas*, 38 ST. MARY'S L.J. at 265.

on the [legal] insufficiency of the evidence has the same effect because it means that no rational factfinder could have voted to convict the defendant.

*Tibbs*, 457 U.S. at 40–41, 102 S.Ct. at 2217 (citations omitted) (emphasis added). In short, evidence is legally insufficient where the "only proper verdict" is acquittal. *Id.* at 42, 102 S.Ct. at 2218. On the other hand,

> A reversal on [a factual-sufficiency] ground, unlike a reversal based on [legally-] insufficient evidence, *does not mean that acquittal was the only proper verdict.* Instead, the appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. A deadlocked jury, we consistently have recognized, does not result in an acquittal barring retrial under the Double Jeopardy Clause.... Similarly, an appellate court's disagreement with the jurors' *weighing of the evidence* does not require the special deference accorded verdicts of acquittal.
>
> ....
>
> A reversal based on the *weight of the evidence*, moreover, can occur *only after the State both has presented [legally-] sufficient evidence to support conviction and has persuaded the jury to convict.* The reversal simply affords the defendant a second opportunity to seek a favorable judgment ... An appellate court's decision to give the defendant this second chance does not create "an unacceptably high risk that the Government, with its superior resources, [will] wear down [the] defendant" and obtain conviction solely through its persistence....

*Id.* at 42–43, 102 S.Ct. at 2218–19 (emphasis added). Thus, the United States Su-

preme Court expressly rejected the argument that a "distinction between the weight [ (factual sufficiency) ] and [legal] sufficiency of the evidence is unworkable," noting that "trial and appellate judges commonly distinguish between the weight [ (factual sufficiency) ] and [legal] sufficiency of the evidence" and the Due Process Clause "sets a *lower limit* on an appellate court's definition of evidentiary sufficiency." *Id.* at 44, 102 S.Ct. at 2219 (emphasis added). The Court further stated,

> Our decisions also make clear that disagreements among jurors or judges do not themselves create a reasonable doubt of guilt. As Justice WHITE, ... explained, "[t]hat rational men disagree is not in itself equivalent to a failure of proof by the State, nor does it indicate infidelity to the reasonable-doubt standard."

*Tibbs*, 457 U.S. at 42 n. 17, 102 S.Ct. at 2218 n. 17 (quoting *Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S.Ct. 1620, 1624, 32 L.Ed.2d 152 (1972)).

The question of law and question of fact presented in the instant case well illustrate the Supreme Court's point. Here, in his first issue, appellant, Kenneth Shaye Ervin, contends that the evidence is legally insufficient to support his conviction, i.e., the case should not have been submitted to the jury as the only proper verdict was acquittal. The majority, applying the *Jackson* legal-sufficiency standard, viewing the evidence in the light most favorable to the State, holds that the evidence is sufficient to support appellant's conviction, and I join this holding. However, in his second issue, appellant, alternatively, presents a question of fact to this Court, essentially arguing that although perhaps legally sufficient, the evidence is factually insufficient to support his conviction because it "is so weak that the verdict is clearly wrong and manifestly unjust," and in support of his

argument he cites *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). Citing *Brooks*, the majority addresses appellant's question of fact by applying the *Jackson* legal-sufficiency appellate standard of review. Although his factual challenge "naturally overlaps" with his legal challenge as discussed in *Laster*, the majority does not distinctly answer appellant's fact question by neutrally considering and weighing all the evidence.

Nevertheless, a distinct and neutral consideration and weighing of all the evidence in the record reveals that it is not so weak that the jury's verdict is clearly wrong and manifestly unjust. *See Watson v. State*, 204 S.W.3d 404, 414–15 (Tex.Crim.App. 2006). Viewing the evidence contrary to the verdict, it is true, as emphasized by appellant, that there were no eyewitnesses to the shooting of the complainant, there is no "direct evidence" regarding the murder, and his "connection with the murder was based entirely on circumstantial evidence." On the other hand, viewing the evidence in support of the verdict, the State presented evidence that appellant had fired gunshots at the complainant on two occasions during the week preceding his murder; immediately before the murder, the complainant's brother saw appellant holding the same gun that appellant had used in the prior shootings; after the complainant's brother saw appellant with the gun, he left the complainant, ran inside an apartment, and then heard two gunshots; after hearing the gunshots, the complainant's brother returned to the complainant and found him dying of gunshot wounds. The State also introduced evidence that a witness at the scene saw appellant quickly walking away from the area where the sound of a gunshot originated. This witness also saw appellant attempting to conceal something that the witness believed to be a gun. Based upon this consideration and weighing of all the evidence, that which is contrary to the verdict as well as that supporting the verdict, I would answer appellant's question of fact by distinctly holding that the jury's verdict is not "clearly wrong and manifestly unjust" and, therefore, the evidence is factually sufficient to support his conviction. *See Watson*, 204 S.W.3d at 414–15. Because the majority resolves appellant's question of fact as a question of law, I concur only in the judgment of this court.

As this case illustrates, distinguishing between and implementing the separate and distinct appellate standards of review for legal- and factual-sufficiency challenges is relatively simple. There is no need to substitute a legal-sufficiency appellate standard of review for the factual-sufficiency standard.

Moreover, the substitution of a legal-sufficiency appellate standard of review, which can be reviewed and applied, respectively, by either the Texas Supreme Court or Texas Court of Criminal Appeals, for a factual-sufficiency appellate standard of review, which constitutionally may not be reviewed and applied by the higher courts, would render the factual-conclusivity clause of the Texas Constitution a dead letter. *See Ex parte Schuessler*, 846 S.W.2d at 852. As explained by the Texas Supreme Court:

> [The factual-conclusivity clause] requires the [c]ourt of . . . [a]ppeals, upon proper assignment, to consider the fact question of weight and preponderance of all the evidence and to order or deny a new trial accordingly as to the verdict may thus appear to it clearly unjust or otherwise. *This is the meaning* given the constitutional phrase 'all questions of fact brought before them on appeal or error'. . . . *But for that interpretation there would be no 'questions of fact' for*

*the [c]ourt of . . . [a]ppeals to determine
. . . .*

*In re King's Estate,* 244 S.W.2d at 662 (emphasis added). Thus, in the words of the Texas Court of Criminal Appeals:

> It [is] not appropriate for this Court to create a standard of review which is in conflict with the language of our State Constitution.

*Meraz,* 785 S.W.2d at 152.

Respectfully, this is precisely what a majority of the Texas Court of Criminal Appeals purports to do in its plurality and concurring opinions in *Brooks.* As noted by the dissenting judges, the majority, without at all considering and addressing the express language of the factual-conclusivity clause and article 44.25, "purports" to overrule *Clewis,* deciding that the authority to reverse criminal judgments and remand the cases on the basis of factual insufficiency, which "has been recognized from the beginning to be inherent in the appellate jurisdiction of first-tier appellate courts in Texas," "need not be 'retained.'" *Brooks,* 323 S.W.3d at 926 (Price, J., dissenting). Significantly, only four of the five justices who would substitute the *Jackson* legal-sufficiency standard for a factual-sufficiency appellate standard of review would do so under Article V, section 5 of the Texas Constitution, which provides that the court of criminal appeals has "final appellate jurisdiction" on questions of law in criminal cases. *Brooks,* 323 S.W.3d at 912 (Hervey, J.). Regardless, such a dramatic change of the constitutionally-delineated conclusive fact jurisdiction of Texas's courts of appeals cannot be made "absent a change in the constitutional and statutory provisions that confer that jurisdiction" on the courts of appeal. *Id.* As previously noted by the court itself, if it is "improper" for the courts of appeals to decide questions of fact and remand cases for a new trial, "it is up to the people of the State of Texas to amend the Constitution." [4] *Meraz,* 785 S.W.2d at 154. It would also be up to the Texas Legislature to amend article 44.25.

In fact, the Texas Supreme Court has previously rejected a challenge to the courts of appeals' constitutional prerogative to review and decide the questions of fact brought before them on appeal. *See Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 648 (Tex.1988). In doing so, it explained that "[t]he right of trial by jury and appellate court review of fact questions have peacefully co-existed for almost one hundred and fifty years, and are thoroughly rooted in our constitution and judicial system." *Id.* at 652.

The supreme court emphasized that in regard to appellate review of fact questions, the right to trial by jury is protected by Texas's "deferential [appellate] standards of review." *Id.* at 651. That a court of appeals is to defer to a jury's determination of credibility and not merely substitute its judgment for that of a jury, i.e., by stating "'[t]he jury evidently believed Appellee's argument, we do not,'" is not inconsistent with a court of appeals' duty to actually weigh evidence in deciding the questions of fact presented to it. *Pool,* 715 S.W.2d at 635. Thus, there is no conflict

---

4. Prior to its opinion in *Ex parte Schuessler,* the court of criminal appeals had been criticized because, "in spite of a constitutional mandate to the contrary," it had, unlike the supreme court, "continue[d] to refuse to recognize the authority of the courts of appeals to determine questions of factual sufficiency of the evidence. There is no sound basis for the disparate interpretations of a single constitutional provision based on whether the matter on appeal is civil or criminal in nature." Susan Bleil & Charles Bleil, *The Court of Criminal Appeals Versus the Constitution: The Conclusivity Question,* 23 St. Mary's L.J. 423, 424 (1991).

in a court of appeals being "deferential" to a jury while at the same time neutrally considering and weighing all of the evidence in the record on a question of fact presented to it; such a standard actually serves to "harmonize" the right to trial by jury with the courts of appeals' constitutional duty to conclusively resolve the questions of fact presented to it on appeal. *Id.* at 634–35. And "[t]he fact that the court of appeals might engage in 'thought processes' akin to the jury's . . . does not establish a violation of the right of trial by jury." *Cropper*, 754 S.W.2d at 651. Of course, ultimately, when a court of appeals actually sustains a challenge on a question of fact presented to it, the court does not substitute its judgment for that of the jury because it does not render judgment in favor of the challenger; rather, the court remands the case for a new trial for another jury to consider the case. *Id.*

Thus, the Texas Supreme Court concluded that the factual-conclusivity clause does not "violate the right of trial by jury." *Id.* at 647. And it recognized the "inescapable fact" that it could not amend the Texas Constitution to eliminate the courts of appeals' prerogative to decide fact questions and, if appropriate, remand cases for new trials. The court emphasized that even if it could, it was "not prepared to sacrifice either" the constitutional right to trial by jury or the constitutional prerogative of the courts of appeals to decide the questions of fact presented to them "for the benefit of the other." *Id.*

But it is not enough that the Texas Supreme Court and the Texas Court of Criminal Appeals merely recognize the prerogative of Texas courts of appeals to conclusively decide all questions of fact brought before them on appeal. In the words of Texas Supreme Court Justice Nathan Hecht, the high courts should not use their very limited jurisdiction to ascertain whether a court of appeals has lawfully decided a question of fact by "consider[ing] all the evidence and stat[ing] its reasons for judging the evidence insufficient to support a finding of fact" to "keep reversing the judgment of the court of appeals until it reaches a result that [the higher court] approves." *Lofton v. Tex. Brine Corp.*, 777 S.W.2d 384, 388 (Tex. 1989) (Hecht, J., dissenting). In other words, they should not try to "fashion some justification for second-guessing the courts of appeals in the exercise of their constitutional prerogative to judge the factual sufficiency of the evidence in a case." *Id.* at 389. As Justice Raul Gonzalez bluntly stated, our higher courts should not play "ping pong" with a court of appeals to prevent a case from being retried after the court has held the evidence factually insufficient to support a jury's verdict. *Id.* at 387 (Gonzalez, J., dissenting). For one of our higher courts "to hold that an appeals court has not conducted its factual insufficiency analysis in a lawful manner, simply to coerce that court into changing its conclusion, is to usurp the constitutional prerogative of the court of appeals." *Id.* at 388 (Hecht, J., dissenting). Nor should our higher courts, when they are dissatisfied with a court of appeals' decision on a question of fact, substitute their judgment for that of the court of appeals by themselves weighing the evidence, crediting some evidence and discrediting other evidence, and then labeling their analysis as one reached on legal-sufficiency grounds. *See City of Keller v. Wilson*, 168 S.W.3d 802, 830–33 (Tex.2005) (O'Neill, J., concurring); *Aluminum Co. of Am. v. Alm*, 785 S.W.2d 137, 140–41 (Tex.1990) (Gonzalez, J., dissenting). As revealed in *Ex parte Schuessler*, the finality of any judgment of our higher courts based on an analysis later deemed inconsistent with the factual-conclusivity clause may be called into question as void ab initio. 846 S.W.2d at 853.

In regard to the plurality and concurring opinions in *Brooks,* it is true that under the doctrine of stare decisis that once "the highest court of the State *having jurisdiction*" of a matter decides a "principle, rule or proposition of law," that court and all "other courts of *lower rank*" must accept the decision as "binding precedent." *Swilley v. McCain,* 374 S.W.2d 871, 875 (Tex.1964) (emphasis added). It is also true, as noted by the majority, that the court of criminal appeals has final appellate jurisdiction on all questions of law in criminal cases. Tex. Const. art. V, § 5. Here, however, only four of the five court of criminal appeals judges who would substitute the *Jackson* legal-sufficiency standard for a factual-sufficiency standard purport to do so under Article V, section 5 of the Texas Constitution. *Brooks,* 323 S.W.3d at 912–13 (Hervey, J.). More importantly, under the factual-conclusivity clause, a Texas court of appeals, in regard to its decisions on the questions of fact presented to it, is not a court of rank "lower" than either the supreme court or the court of criminal appeals because the courts of appeals have conclusive, exclusive, and final authority over such questions of fact. As recognized by the court of criminal appeals, the factual-conclusivity clause gives "final appellate jurisdiction to the courts of appeals on questions of fact brought before" them. *Laster,* 275 S.W.3d at 518–19. And neither the supreme court nor the court of criminal appeals has any jurisdiction to create a factual-sufficiency appellate standard of review "in conflict" with the Texas constitution, i.e., any standard that would eliminate or in any way interfere with the exclusive authority of the courts of appeals to actually decide the questions of fact presented to them by considering and weighing all the evidence in a trial record. *Ex parte Schuessler,* 846 S.W.2d at 852; *Meraz,* 785 S.W.2d at 152; *see also Pool,* 715 S.W.2d at 633–35; *In re*

*King's Estate,* 244 S.W.2d at 661–62. Thus, the doctrine of stare decisis does not bind a Texas court of appeals to apply such an invalid, unconstitutional, appellate standard of review.

In sum, the Texas Constitution expressly recognizes that Texas courts of appeal have "conclusive" jurisdiction to decide the questions of fact presented to them on appeal; this "conclusive fact jurisdiction," this constitutional "prerogative," by its very nature requires that a court of appeals consider and weigh all the evidence in a case when a question of fact is presented to it on appeal and, if appropriate, to remand the case for a new trial; and neither the Texas Supreme Court nor the Texas Court of Criminal Appeals may lawfully amend the Texas Constitution to usurp the constitutional prerogative of the Texas courts of appeals to properly review and decide the questions of fact presented to them on appeal. Accordingly, a Texas court of appeals is duty bound under the Texas Constitution to exercise the full extent of its appellate powers on the questions of fact brought before it on appeal, and neither the Texas Supreme Court nor the Texas Court of Criminal Appeals has the lawful authority to interfere with or relieve the courts of appeals of this constitutional duty. Any attempt by either court to do so is void ab initio. *Ex parte Schuessler,* 846 S.W.2d at 852.

Here, appellant has squarely presented a question of fact to this Court, contending that the evidence in support of his conviction is so weak that the jury's verdict is clearly wrong and manifestly unjust. Although awkward under the circumstances, this Court still has a constitutionally-delineated right and duty, with which no other court may lawfully interfere, to properly address appellant's question of fact by considering and weighing all the evidence in record. A proper consideration and

weighing of all the evidence, as discussed above, reveals that appellant's second issue should be overruled. However, because the majority resolves appellant's question of fact as a question of law, I concur only in the judgment of this Court.

Furthermore, I respectfully request that the Texas Court of Criminal Appeals reconsider its opinions in *Brooks* in light of the factual-conclusivity clause of the Texas Constitution, Code of Criminal Procedure article 44.25, the court's own well-established prior precedent concerning the serious constitutional conflict that is now presented by its holding in *Brooks,* and the well-established precedent of the Texas Supreme Court with which *Brooks* collides.

Absent reconsideration by the court of criminal appeals, I respectfully request that the Texas Legislature review the issue surrounding the conclusive jurisdiction of Texas courts of appeals to decide the questions of fact presented to them and the problem of interference with that conclusive jurisdiction. I further request that the Texas Legislature take whatever action that it deems appropriate under the circumstances, including, but not limited to, the resolution of any conflict between the court of criminal appeals' holding in *Brooks* and both the factual-conclusivity clause of the Texas Constitution and Code of Criminal Procedure article 44.25, with any legislation that it deems necessary and appropriate to protect the conclusive fact jurisdiction of the Texas courts of appeals so that they may meaningfully perform their constitutional right and duty to decide questions of fact.

The People of the State of Texas have the exclusive authority to amend the Texas Constitution. Until they do so, "The right of [Texas] courts of appeals to review for factual insufficiency *must continue undis-* *turbed."* *Pool,* 715 S.W.2d at 634 (emphasis added).