Opinion issued April 21, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01078-CR

———————————

Ronnie Roshell
Johnson, Appellant

V.

The State of Texas, Appellee



 



 

On
Appeal from the 10th District Court

Galveston
County, Texas



Trial Court Case No. 08CR2561

 



 

MEMORANDUM OPINION

Appellant, Ronnie Roshell Johnson, was
charged by indictment with murder.[1]  Appellant pleaded not guilty.  A jury found appellant guilty as charged and
assessed punishment at life in prison. 
In four issues, appellant argues (1) the evidence was insufficient to
support a finding that appellant was the shooter; (2) the trial court erred by
denying his motion to suppress; (3) the State violated his due process rights
by failing to turn over exculpatory evidence; and (4) the trial court erred by
refusing to give a jury instruction on the claimed failure by the State to turn
over exculpatory evidence.

We affirm. 

                                                                                                                                                                
Background

In the evening of May 18, 2007, Louis Joel Gonzalez, the
complainant, was at some bars in Texas City, Texas with his cousin, Ari Sosa; a
friend, Joel Quintana; and some other friends. 
They all consumed a significant amount of alcohol.  After the bars had closed at 2:00 a.m. the
next morning, Gonzalez drove around in his truck with Sosa and Quintana to see
if he could find a prostitute.  Not
familiar with where to find a prostitute, Gonzalez saw a black male walking
along the street and asked the man if he knew where they could find some
prostitutes.  The man offered to help,
jumped into the back of the truck, and began giving Gonzalez directions.

Once they reached their destination, the man jumped out of
the truck and went into an apartment complex. 
He returned with a woman in her late thirties.  Gonzalez declined.  The man got back into the truck and directed
Gonzalez to a different location nearby. 
Again, the man got out of the truck, walked into an apartment complex,
and returned with a woman.  Gonzalez
again declined.

At this point, the man became hostile and began yelling at
Gonzalez.  Gonzalez began to drive away
when a shot was fired.  Gonzalez was hit
in the head and killed almost instantly. 
Quintana and Sosa jumped out of the car and fled.

In the course of the subsequent police investigation, officers
determined that appellant’s mother’s house was in the immediate vicinity of the
shooting.  Additionally, Texas City
police officers located two known prostitutes that told the officers that they
had been approached on the night in question by appellant, who was trying to
obtain a prostitute for some Hispanic males in a truck.  The two women, Trudi Mills and Sindy Griffin,
both were familiar with appellant and knew him from the neighborhood.  They both also identified appellant in
separate photographic line-ups.  One
other witness testified that he saw appellant and Mills talking together on the
night in question.  Griffin, the first
woman appellant had brought to Gonzalez that night, told police officers that
appellant had told her that he had a gun and was “going to jack these
guys.”  Griffin and one of the officers
testified at trial that to “jack” someone was slang for robbing them.  

Previously, when police officers initially arrived at the
scene of the crime, they found Gonzalez’s pockets were turned out and a gold
necklace that he regularly wore was missing. 
Some time after the officers had arrived at the scene of the crime,
Griffin passed by and recognized the truck in which Gonzalez’s body had been
found as the same truck that appellant had taken her to earlier.  During one of her interviews with the
officers, she was presented with pictures of Gonzalez and Quintana.  Griffin noted on the photograph of Gonzalez
that she believed he was the driver of the truck but she was not certain.  She noted on the photograph of Quintana that
she believed he was the passenger in the truck but she was not certain.  At trial, Griffin stated that she was certain
that she had identified the two men correctly.

A Marlin rifle was found a few blocks from the scene of
the crime.  A ballistics test established
that this rifle was the weapon used to shoot Gonzalez.  In a search of the room in which appellant
lived at his grandmother’s house, a police officer found a box of bullets that
were the same make and caliber as the bullet that killed Gonzalez.

Tanya Dean performed the analysis comparing appellant’s
DNA to DNA found on the rifle.  According
to Dean’s testimony, DNA is analyzed by comparing 16 specific loci—that is,
segments of the DNA strand—from two separate samples.  If all 16 of the loci for a sample can be
determined, it is said to be “a full profile.” 
If less than 16 of the loci can be determined, it is said to be “a
partial profile.”  Dean testified that
she identified three loci from one sample taken from the stock of the rifle and
then identified another loci from another sample also taken from the stock of
the rifle.  Dean treated all four of
these loci as one sample, compared it to appellant’s DNA, and determined that
appellant could not be excluded as the contributor of the DNA located on the
rifle.  She further testified that, given
the somewhat rare characteristics of one of the four loci, this partial profile
would be a match with approximately one in every 16.24 million
African-Americans, one in every 889.7 million Caucasians, and one in every
822.4 million Hispanics.

On cross-examination, Dean admitted that there had been
instances of DNA contamination at her lab. 
Contamination occurs when DNA from a source other than the sample source
is inadvertently introduced into the sample, leading to incorrect
identifications on one or more loci. 
Dean also admitted that she had been cited for DNA contamination events
in multiple instances.  The time period
for the instances of DNA contamination by Dean or others in the lab was not
established.  Nor was it established that
there had been any contamination in the DNA analyses for this case.

Huma Nasir, a DNA analysis expert presented by appellant,
testified that it was inappropriate for Dean to have treated the loci from the
two samples as one sample because there was no way of determining whether the
two samples were from the same person. 
She further testified that, considering only the partial profile from
the first sample (the profile with three loci), the profile would be a match
with approximately one in every 45,000 African-Americans.

During the jury charge conference, appellant asked for a
jury instruction relating to the State’s failure to notify appellant that Dean
had been cited for instances of DNA contamination in the past.  The trial court denied the request.

                                                                                                                                   
Sufficiency of the Evidence

In his fourth issue, appellant argues that the evidence is
insufficient to establish his identity as the shooter.

A.              
Standard of Review

This Court reviews sufficiency-of-the-evidence challenges applying
the same standard of review, regardless of whether an appellant presents the
challenge as a legal or a factual sufficiency challenge.  See Ervin
v. State, 331 S.W.3d 49, 52–55 (Tex. App.—Houston [1st Dist.] Nov. 10,
2010, pet. ref’d) (construing majority holding of Brooks v. State, 323 S.W.3d 893, 912, 924–28 (Tex. Crim. App. 2010)).  This standard of review is the standard
enunciated in Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). 
See id.  Pursuant to this standard, evidence is
insufficient to support a conviction if, considering all the record evidence in
the light most favorable to the verdict, no rational fact finder could have
found that each essential element of the charged offense was proven beyond a
reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; In re Winship, 397 U.S. 358, 361, 90 S. Ct.
1068, 1071 (1970); Laster v. State,
275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We can hold evidence to be insufficient under
the Jackson standard in two
circumstances: (1) the record contains no evidence, or merely a “modicum” of
evidence, probative of an element of the offense, or (2) the evidence
conclusively establishes a reasonable doubt.  See
Jackson, 443 U .S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11,
2789; see also Laster, 275 S.W.3d at
518; Williams, 235 S.W.3d at 750. 

The sufficiency-of-the-evidence
standard gives full play to the responsibility of the fact finder to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  An appellate court presumes that the fact
finder resolved any conflicts in the evidence in favor of the verdict and
defers to that resolution, provided that the resolution is rational.  See
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793.  In viewing the record, direct and
circumstantial evidence are treated equally; circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor, and
circumstantial evidence alone can be sufficient to establish guilt.  Clayton,
235 S.W.3d at 778.  Finally, the
“cumulative force” of all the circumstantial evidence can be sufficient for a
jury to find the accused guilty beyond a reasonable doubt.  See
Powell v. State, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

B.              
Analysis

In his brief, appellant concedes that it is appropriate to
presume that the black man that traveled with Gonzalez, Quintana, and Sosa
committed the murder.  Appellant
contends, however, that there was insufficient evidence to establish that he
was that man.

Viewing the evidence in the light most favorable to the
verdict, Mills and Griffin testified that they had been approached on the night
in question by appellant, who was trying to obtain a prostitute for some
Hispanic males in a truck.  Both of the
women were familiar with appellant and knew him from the neighborhood.  They both also identified appellant in
separate photographic line-ups.  One
other witness testified that he saw appellant and Mills talking together on the
night in question.

Griffin, the first woman that appellant had brought to
Gonzalez that night, told police officers that appellant had told her that he
had a gun and was “going to jack these guys.” 
Griffin and one of the officers testified at trial that to “jack”
someone was slang for robbing them.  When
police officers initially arrived at the scene of the crime, Gonzalez’s pockets
had been turned out and a gold necklace that he regularly wore was missing.

Some time after the officers had arrived at the scene of
the crime, Griffin passed by and recognized the truck in which Gonzalez’s body
had been found as the same truck that appellant had taken her to earlier.  During one of her interviews with the officers,
she was presented with pictures of Gonzalez and Quintana.  Griffin noted on the photograph of Gonzalez
that she believed he was the driver of the truck but she was not certain.  She noted on the photograph of Quintana that
she believed he was the passenger in the truck but she was not certain.  At trial, Griffin stated that she was certain
that she had identified the two men correctly.

A Marlin rifle was found a few blocks from the scene of
the crime.  A ballistics test established
that this rifle was the weapon used to shoot Gonzalez.  In a search of the room in which appellant
lived at his grandmother’s house, a police officer found a box of bullets that
were the same make and caliber as the bullet that killed Gonzalez.  It was also established that appellant’s
mother’s house was in the immediate vicinity of the scene of the crime.

DNA samples were taken from the rifle.  While the samples did not form a complete
profile, it was established that appellant could not be excluded as the
contributor to the DNA samples.  The
parties disputed the statistical significance of the partial DNA profile
obtained from the rifle.  Even the most
conservative estimate, however, established that the profile would only match
one in every 45,000 African Americans.

Appellant argues that the evidence supporting a finding
that he was the shooter should be considered insufficient because Quintana’s
description of the man that traveled with them that night did not match
appellant.  Specifically, Quintana told
the police officers that the man that was locating prostitutes for Gonzalez was
not wearing anything on his head that night, and Quintana made no mention of
any tattoos.

In contrast, Mills, Griffin, and another witness testified
that appellant was wearing a red cap or bandana that night.  The evidence also established that appellant
had a small tattoo of some teardrops on one of his cheeks.  Quintana did testify, however, that it was
dark on the night of the incident and that he did not get a good view of the
black man traveling with them.

The discrepancies between the descriptions of appellant’s
appearance and the shooter’s appearance on the night in question were conflicts
in the record for the jury to resolve.  See
Clayton, 235 S.W.3d at 778
(holding it is fact finder’s duty to resolve conflicts in evidence).  When, as here, the record supports
conflicting inferences, we must defer to the jury’s resolution of the
conflict.  Id.  

We hold that the
evidence was sufficient to support a finding beyond a reasonable doubt that
appellant was the man who shot Gonzalez. 
We overrule appellant’s fourth issue.

                                                                                                                                                  
Motion to Suppress

In his first issue, appellant argues that the trial court
erred by denying his motion to suppress the introduction of evidence obtained
from a warrantless search of his room inside his grandmother’s house.  The evidence in question was a box of bullets
matching the kind of bullet used in the offense.

Prior to the trial, the trial court held a hearing on the
motion to suppress and denied appellant’s motion.  At the trial, when the State sought to
introduce the bullets into evidence, appellant’s counsel stated, “No
objection.”  “The affirmative acceptance
of this previously challenged evidence waived any error in its admission.”  Swain
v. State, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005); see also, Moraguez v. State, 701 S.W.2d 902, 904 (Tex. Crim. App.
1986) (holding that defendant preserves objection to introduction of evidence
in pre-trial motion to suppress but waives that error when he affirmatively
states no objection to introduction of same evidence at trial).  Accordingly, this issue has been waived.

We overrule appellant’s first issue.

                                                                                                                                                             
DNA Analysis

In his second issue, appellant argues that the State
committed a Brady violation by
failing to notify appellant that Dean had been cited for instances of DNA contamination
in the past.  In his third issue,
appellant argues that the trial court erred by refusing to give a jury
instruction relating to the alleged violation.

In Brady, the
United States Supreme Court held that the prosecution’s suppression of evidence
favorable to a defendant violates due process if the evidence is material to
either guilt or punishment, without regard to the good or bad faith of the
prosecution.  Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963);
see also Harm v. State, 183 S.W.3d
403, 406 (Tex. Crim. App. 2006).  When
evidence withheld in violation of Brady
is disclosed at trial, the defendant’s failure to request a continuance “indicates
that the tardy disclosure of the evidence was not prejudicial” and waives the
error.  State v. Fury, 186 S.W.3d 67, 73–74 (Tex. App.—Houston [1st Dist.]
2005, pet. ref’d).

Testimony of Dean’s past instances of DNA contamination
was elicited during her cross-examination. 
At no point during Dean’s testimony did appellant request a continuance
or in any other way raise a complaint of any Brady violation.  The State
rested after Dean’s testimony.  Appellant
then presented Nasir, his own DNA expert.  Following this testimony, appellant rested and
the State rested and closed.

It was not until the next morning, during the jury charge
conference, that appellant presented his Brady
complaint to the trial court. 
Appellant’s counsel represented to the trial court that they were not
aware of any instances of DNA contamination by Dean until they received a note
from Nasir advising them to ask about DNA contamination.  Counsel for the State represented to the
trial court that they had not been aware of any instances of DNA contamination
by Dean prior to the testimony either.

The State argues on appeal that appellant’s failure to
request a continuance after Dean admitted to instances of DNA contamination
waived any error.  See Fury, 186 S.W.3d at 73–74. 
Appellant responds that any benefit of a continuance was rendered moot
because all of the samples had been consumed in Dean’s testing.

Dean testified that, if she had consumed the entire
samples in her testing, it would have been included in her report.  Because there was no indication in her report
that any of the samples had been fully consumed, Dean concluded that some
portions of the samples must still exist. 
At the very least, a continuance could have resolved whether samples
sufficient for testing still existed.

Assuming without deciding that the State’s failure to
disclose prior instances of DNA contamination by Dean was a Brady violation, we hold that any error
was waived or at least was established to not truly be prejudicial due to
appellant’s failure to request a continuance. 
We overrule appellant’s second and third issues.

                                                                                                                                                                   
Conclusion

We affirm the judgment of the trial court.

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish.   Tex. R.
App. P. 47.2(b).











[1]           See Tex. Penal Code Ann. § 19.02(b)
(Vernon 2003).