Opinion issued February 2, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00122-CR

———————————

Kenneth Wayne Jerome, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 263rd Judicial District Court 

Harris County, Texas



Trial Court Case No. 1233728

 



 

MEMORANDUM OPINION

          A
jury found appellant, Kenneth Wayne Jerome, guilty of the offense of murder,[1] and the trial court
assessed his punishment at confinement for seventy-five years.  In two issues, appellant contends that the
evidence is legally and factually insufficient to support his conviction.

          We
affirm.

Background

          Ontwain Grant testified that on the evening of October 23,
2006, he and the complainant, Deric Williams, were
watching a football game on a television in the complainant’s bedroom.  After Grant left the room and entered another
room, he heard a “big boom.”  When he
went back to check on the complainant, Grant found that the bedroom door was
locked.  He left the house, walked around
to the complainant’s bedroom window, and saw William Broussard and Vincent Golston, the owner of the house, peering through boards
over the window.  As Golston
and Broussard were trying to pry the boards off the window, Grant could hear
the complainant asking, “What’s wrong? . . . [W]hy
you doing me like this?”  When Grant
looked inside the window, he saw appellant, who was standing over the
complainant, back away and then leave the room. 
Golston and Grant went back into the house and
found the complainant, who was not breathing, lying motionless on the bedroom
floor.  On cross-examination, Grant initially
denied that he had told police officers that he had arrived at the house
between 9:00 and 10:00 in the evening. 
However, when confronted with his initial statement, Grant explained
that he may have misstated some facts because “stuff happens so fast.”  Grant also admitted that, in his initial
statement, he had failed to mention to police officers that he had heard the
complainant ask “what’s wrong?” 

Broussard testified that when he went
to visit the complainant, he found the bedroom door locked.  He then exited the house and went to the
complainant’s bedroom window, where he saw appellant arguing with the complainant.  Broussard knew appellant, having grown up in
the same neighborhood as him and having worked on his car.  Broussard saw appellant “walk[]
up behind” the complainant, grab him from behind his neck, and “start[] choking
him.”  Broussard twice asked appellant to
stop, but he “did not respond in any way” and continued to choke the
complainant for ten to fifteen minutes before the complainant fell to the
floor.  Appellant then picked up a chair,
threw it at the complainant’s chest, and left the house.  Broussard left shortly thereafter and
voluntarily reported what he had seen to police officers the next day.  On cross-examination, Broussard admitted that,
in his initial statement to the police officers, he did not mention that he had
twice asked appellant to stop choking the complainant.

Harris County Assistant Medical
Examiner Dr. Roger Milton testified that he was assigned to perform an autopsy
on the complainant’s body.  Milton noted
that the complainant’s injuries included “small hemorrhages . . . in the lower
eyelid[s]” and within the eyes, which were likely as a result of increased
blood pressure in those areas.  Milton
explained that the hemorrhages were consistent with “neck compression” that “trapp[ed] the blood inside the
head.”  The complainant also had
hemorrhages in the “larger muscles of his neck,” behind his larynx, and behind
his throat.  Milton noted that he had
“commonly see[n]” such injuries in “strangulation-type cases” where there is
“significant force applied to the neck.” 
Milton opined that the complainant’s injuries indicated a homicide by
“manual strangulation” and that the attacker used both his arm and hands in
strangling the complainant.

Appellant, who described the
complainant as a “real close friend” and explained that they had grown up
together, testified that he went to the complainant’s
house to visit him.  When appellant
arrived, he saw Grant standing to the side of the house.  Appellant knocked on the front door, and he
was greeted by Vincent Golston’s brother, Billy, who
informed him that the complainant was in his bedroom.  Appellant explained that the complainant’s
bedroom was not the room identified by Grant and Broussard, but a different
room on the other side of the house.  When
appellant entered the complainant’s bedroom, he saw the complainant talking on
a telephone.  After the complainant ended
his telephone conversation, appellant started arguing with the complainant because
the complainant had “kind of put [appellant’s] business out there in the
streets.”  After arguing for about five
minutes, appellant heard somebody “beating on the house” and saying that the
police officers were outside.  Appellant
then “got paranoid,” ran out of the house, and drove home.

Standard of Review

We review the legal sufficiency of the evidence by
considering all of the evidence “in the light most favorable to the
prosecution” to determine whether any “rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct.
2781, 2788–89 (1979).  Our role is
that of a due process safeguard, ensuring only the rationality of the trier of
fact’s finding of the essential elements of the offense beyond a reasonable
doubt.  See Moreno v. State, 755 S.W.2d
866, 867 (Tex. Crim. App. 1988). 
We give deference to the fact finder to fairly resolve conflicts in
testimony, to weigh evidence, and to draw reasonable inferences from the facts.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  However, our duty requires us to “ensure that
the evidence presented actually supports a conclusion that the defendant
committed the crime that was charged.”  Id.  

We now review the factual
sufficiency of the evidence under the same appellate standard of review as that
for legal sufficiency.  Ervin
v. State, 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010,
pet. ref’d.).  

 

 

Sufficiency of the Evidence

  In his two issues, appellant argues that the
evidence is legally and factually insufficient to support his conviction
because the testimony of both Broussard and Grant was inconsistent and
“contradictory to their original statements to the police,” and, as a result,
“[n]o reasonable jury could have found” appellant guilty of murder beyond a
reasonable doubt.  

A person commits the
offense of murder if he intentionally or knowingly causes the death of an
individual.  Tex. Penal Code Ann. § 19.02(b)(1)
(Vernon 2011).  

Viewing the evidence
in the light most favorable to the verdict, Broussard testified that he saw
appellant grasp the complainant in a “chokehold” for ten to fifteen minutes
before releasing him onto the floor. 
This evidence alone satisfies the statutory elements of murder.  See id.
 The testimony of a single eyewitness may
be legally sufficient to support a conviction of a criminal offense.  See
Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (upholding
conviction for attempted murder where only one witness saw appellant with gun);
Davis v. State, 177 S.W.3d 355, 359
(Tex. App.—Houston [1st Dist.] 2005, no pet.) (affirming
conviction for aggravated robbery where central issue involved a single
witness’s credibility); see also Proctor
v. State, 319 S.W.3d 175, 185 (Tex. App.—Houston [1st Dist.] 2010, pet. struck);
Lee v. State, 176 S.W.3d 452, 458
(Tex. App.—Houston [1st Dist.] 2004), aff’d, 206 S.W.3d 620 (Tex. Crim. App. 2006).  Broussard’s testimony was substantiated by
Grant, who saw appellant standing over the complainant’s body.  Furthermore, Dr. Milton’s analysis of the
complainant’s injuries was also consistent with Broussard’s testimony that
appellant had choked the complainant.  

Appellant asserts that
both Broussard and Grant had criminal histories and there were inconsistencies
between their initial statements to police officers and their in-court
testimony.  Specifically, appellant notes
that Broussard did not tell police officers that he had asked appellant to stop
choking the complainant and Grant did not tell the officers that he had heard
the complainant speak.  Appellant also
notes that although Broussard testified that appellant choked the complainant
for ten to fifteen minutes, Grant testified that he immediately went outside
after hearing a “big boom” to see appellant standing over the motionless
complainant.  Although there were some
inconsistencies in Grant’s and Broussard’s testimony, it is the function of the
jury to resolve any conflicts in the evidence and evaluate the credibility of
the witnesses.  See, e.g., Williams, 235 S.W.3d at 750; see also Padilla v. State, 326 S.W.3d 195, 200 (Tex. Crim. App.
2010) (“Faced with a record of historical facts that support conflicting
inferences, the reviewing court ‘must presume . . . that the trier of fact
resolved any such conflicts in favor of the prosecution, and must defer to that
resolution.’”) (quoting Jackson, 443 U.S. at 326).  Accordingly,
we hold that the evidence is sufficient for a rational jury to find appellant
guilty of the offense of murder.  See Moreno, 755 S.W.2d at 867.


We overrule
appellant’s two issues.

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Massengale, and Huddle.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code
Ann. § 19.02 (Vernon 2011).