**Opinion issued August 29, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00516-CR

————————————

**GARY DON FISHER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

———————————————————————————————————————

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1278676**

———————————————————————————————————————

# MEMORANDUM OPINION ON REHEARING[1]

---

[1]    We originally issued our opinion in this appeal on April 30, 2013. Appellant Gary Don Fisher has moved for rehearing and en banc reconsideration. We deny the motion for rehearing, withdraw our previous opinion, vacate our judgment, and issue this opinion and the related judgment in their stead. The motion for en banc reconsideration is dismissed as moot. *See Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 40 & n.2 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

A jury found Fisher guilty of aggravated robbery[2] and after Fisher pleaded true to two enhancement paragraphs, the trial court assessed his punishment at fifty years' incarceration. In three issues, Fisher contends that (1) the evidence was insufficient to support his conviction, (2) the trial court's failure to instruct the jury on the lesser-included offense of theft was egregiously harmful, and (2) his trial counsel's failure to object to the omission of the lesser-included instruction of theft from the charge constituted ineffective assistance of counsel. We affirm the judgment of the trial court.

## Background

Santiago Rico-Rosas had just returned home from work one afternoon when he heard a noise coming from his daughter's room. When he stepped into the hall, Rosas encountered a man he did not know holding a knife. The man in the hallway was later identified as Fisher. According to Rosas, Fisher put one hand on or near Rosas' neck, leaving a bloody mark on the white t-shirt he was wearing, while he pointed the knife at Rosas' side/stomach area with his other hand. Rosas could feel the knife at his side and he was afraid that Fisher would hurt him. Although Fisher said something to him, Rosas could not understand him because he only spoke Spanish. When Fisher tried to take Rosas' wallet out of his pants pocket, Rosas grabbed the wallet and gave Fisher the ninety dollars in cash that he was

---

[2]     TEX. PENAL CODE ANN. §§ 29.02(a)(2), .03(a)(2) (West 2011).

carrying. At that point, Fisher pushed Rosas onto the bed in the master bedroom. Holding the knife in his hand, Fisher searched the room while Rosas watched. Fisher then left with Rosas' cash and some jewelry he found in the bedroom, as well as with the knife. Rosas' son-in-law arrived at the home shortly thereafter and called the police.

The first officer at the scene that day testified that the police found a broken window in Rosas' daughter's bedroom and blood drops in the hallway outside the bedroom. They also found a bloody palm print on an envelope on a nightstand in the master bedroom. The only identifiable print recovered from the scene, however, belonged to one of the officers. A wallet that contained Fisher's driver's license, social security card, bank cards and a debit card was also recovered in the hallway outside the daughter's bedroom. According to the officer, Rosas did not have any visible injuries after his encounter with Fisher and he did not require any medical attention. Rosas showed the white t-shirt with the blood on it to the responding officers, but they did not take the t-shirt with them, and Rosas eventually threw the shirt away.

Detective Heenan, who interviewed Rosas at his home the next day, testified that, although Rosas was still a little shaken up by his encounter with Fisher, he did not appear to have any visible injuries. Rosas identified Fisher as the man who robbed him from a photo array the detective showed to him.

3

Fisher was apprehended several weeks later. Detective Heenan and a trainee took Fisher's statement—a recording of which was offered and admitted into evidence at trial.[3] During that interview, Fisher admitted that he broke a window in Rosas' house, cutting his hand in the process. He also told police that he entered the home through the window and must have dropped his wallet while he was there. Although he admitted to stealing some jewelry, Fisher claimed that he ran from the house as soon as he saw Rosas and denied taking cash from Rosas' wallet. Fisher also adamantly denied that he threatened Rosas or that he had a knife or any kind of weapon with him. No knife was ever recovered.

## Discussion

### I. Sufficiency of the Evidence

In his first issue, Fisher contends that the evidence was insufficient to support his conviction for aggravated robbery. According to Fisher, Rosas' testimony was the only evidence that he (1) used or exhibited a deadly weapon, to wit, a knife or (2) threatened or placed Rosas in fear of imminent bodily injury or death. Fisher contends that Rosas' testimony was not credible, and even if it was credible, it was so contradictory that it conclusively established a reasonable doubt as to both of these elements of the offense. Fisher further contends that even if the

---

[3] During that interview, the trainee told Fisher that the police had recovered a t-shirt with Fisher's bloody handprint from the scene. Detective Heenan, however, admitted at trial that no bloody t-shirt was ever recovered.

4

jury believed Rosas' testimony that he used or exhibited a knife during the commission of the offense, no rational juror could have concluded beyond a reasonable doubt that the purported knife was a deadly weapon.

### A.    Standard of Review

We review challenges to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). *See Ervin v. State*, 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010)). Under the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact-finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89. We hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In viewing the record, direct and circumstantial evidence are treated equally. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The *Jackson* standard gives full play to the responsibility of the fact-finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2788–89; *Clayton*, 235 S.W.3d at 778. We presume that the fact-finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. We also defer to the fact-finder's evaluation of the credibility and weight of the evidence. *See Williams*, 235 S.W.3d at 750.

## B. Applicable Law

### 1. Aggravated Robbery

A person commits the felony offense of aggravated robbery when in the course of committing theft, with intent to obtain and maintain control of property he knowingly or intentionally threatens or places another in fear of imminent bodily injury or death and uses or exhibits a deadly weapon in the commission of the offense. TEX. PENAL CODE ANN. §§ 29.02(a)(2), .03(a)(2) (West 2011).

### 2. Deadly Weapon

A knife is not considered a deadly weapon per se. *See Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); *Victor v. State*, 874 S.W.2d 748, 751 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (stating pocket knife is "manifestly designed and made for purposes other than inflicting death or serious

6

bodily injury"). Instead, a knife becomes a deadly weapon if it is capable of causing death or serious bodily injury in the manner of its use or intended use. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West 2011); *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). When no actual injury is sustained, the State must present evidence of other factors to establish that a knife is a deadly weapon. *See Blain*, 647 S.W.2d at 294; *Victor*, 874 S.W.2d at 751. These factors include: (1) the manner of its use or intended use; (2) the size, shape, and sharpness of the blade; (3) threats made by the accused; (4) the physical proximity of the accused and the victim; (5) testimony regarding the knife's life-threatening capabilities; and (6) the complainant's fear of serious bodily injury or death. *See Blain*, 647 S.W.2d at 294; *Victor*, 874 S.W.2d at 751. While the instrument may have been brandished and may have placed the complainant in fear, that alone is not enough to establish it as a deadly weapon. *Blain*, 647 S.W.2d at 294. "Each case must be examined on its own facts to determine whether the fact finder could have concluded from the surrounding circumstances that the knife was used or was to be used as a deadly weapon." *Billey v. State*, 895 S.W.2d 417, 420–21 (Tex. App.—Amarillo 1995, pet. ref'd).

## C. Analysis

### 1. Legal Sufficiency

Fisher argues that no rational juror could have concluded beyond a

reasonable doubt that (1) he used or exhibited a knife, or threatened Rosas with imminent bodily injury and death, and (2) the purported knife was a deadly weapon.[4]

Here, the evidence that Fisher used or exhibited a deadly weapon (i.e., a knife) consists of Rosas' testimony that Fisher had a "small" pocket knife that folded in half that he held against Rosas' side before he attempted to grab Rosas' wallet. Rosas testified that he was scared that Fisher was going to hurt him with the knife. When asked if Fisher could have killed him with the knife if he had tried to, Rosas responded, "Yes, easy." According to Rosas, Fisher held the knife in his hand while he searched Rosas' bedroom for valuables. During trial Rosas also demonstrated how Fisher approached him in the hallway and held the knife to his side.

Although the State is not required to introduce the knife itself into evidence in order to establish that it was a deadly weapon, *Victor*, 874 S.W.2d at 751, it is common practice for prosecutors to use facsimiles as demonstrative exhibits at trial

---

[4] Fisher argues on rehearing that the panel failed to address the first prong of his legal sufficiency argument (i.e., that no rational juror could have concluded beyond a reasonable doubt that he used or exhibited a knife, or threatened Rosas with imminent bodily injury and death because Rosas' testimony was not credible, and even if the testimony was credible, it was so contradictory that it conclusively established a reasonable doubt as to whether Fisher used or exhibited a weapon). Rather than addressing each prong separately, we combined Fisher's legal sufficiency arguments and addressed his challenge to the sufficiency of the evidence that he used or exhibited a knife, or threatened Rosas with imminent bodily injury and death, as part of our discussion regarding the sufficiency of the evidence that the knife was a deadly weapon.

8

in order to establish the missing knife's characteristics. That was not done in this case. In fact, there is nothing in the record that indicates the actual size or sharpness of the blade, other than the fact that the knife was "small," "not too big." Although the record reflects that Rosas used his hand to indicate the length of the blade to the jury at one point, the record does not reflect *what* length he indicated.

The State also attempted to elicit testimony from Detective Heenan about the purported knife's capability to cause serious bodily harm or death. Not only did the State fail to elicit any testimony from Detective Heenan regarding the capability of a pocket knife to cause death or serious bodily harm if it was used to stab Rosas in the side (i.e., the manner of its use or intended use), but it failed to ask him any questions at all with respect to the knife Rosas described for the jury. Detective Heenan testified that a folding knife that was small enough to fit in someone's pocket was considered a "deadly weapon" and was capable of causing serious bodily injury or death. This testimony, however, is not only a broad statement about pocket knives in general—as opposed to the particular pocket knife that Fisher allegedly used—but it is also an inaccurate statement of the law. *See Victor*, 874 S.W.2d at 751 (stating that pocket knives are not deadly weapons, per se, because they are "manifestly designed and made for purposes other than inflicting death or serious bodily injury").

Despite these shortcomings, Rosas' testimony—especially his statement that Fisher could have killed him with the knife if he had tried to do so—amounts to legally sufficient evidence that the knife Fisher used and exhibited during the robbery was a "deadly weapon." *See Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006) ("The testimony of a single eyewitness is sufficient to support a felony conviction."). The jury alone decides whether to believe eyewitness testimony, and the jury alone resolves any conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2788–89; *Clayton*, 235 S.W.3d at 778.

Thus, viewing the evidence in the light most favorable to the verdict and deferring to the jury's determinations with respect to the weight of the evidence and credibility of the witnesses, we hold that there is legally sufficient evidence to support Fisher's aggravated robbery conviction. *See Ervin*, 331 S.W.3d at 55.

### 2. Factual Sufficiency

Fisher also challenges the factual sufficiency of the evidence supporting his conviction. He correctly notes that the Factual-Conclusivity Clause of the Texas Constitution gives this Court conclusive and final power to determine the questions of fact that he presents to this Court in his appeal. *See* TEX. CONST. art. V, § 6. And he urges this Court to review these questions of fact under Texas' traditional

10

factual-sufficiency analysis articulated in *Clewis v. State*, 922 S.W.2d 126, 134–36 (Tex. Crim. App. 1996) and its progeny. Evidence is factually insufficient to support a verdict if, "considering all the record evidence in a neutral light," (1) the evidence supporting the verdict is "too weak" to support the fact-finder's verdict, or (2) considering conflicting evidence, the fact-finder's verdict is against the great weight and preponderance of the evidence. *Clewis*, 922 S.W.2d at 134.

This Court addressed this issue in *Ervin*, 331 S.W.3d at 53–54. In *Ervin*, the majority recognized that a plurality of the Court of Criminal Appeals had purported to overrule *Clewis* in *Brooks*. *See Ervin*, 331 S.W.3d at 53. Under *Ervin* and *Brooks*, all challenges to the sufficiency of the evidence in a criminal case are evaluated "in the light most favorable to the prosecution"; they are not considered in a neutral light and weighed under Texas' traditional factual-sufficiency review under the Factual-Conclusivity Clause as discussed and explained by the Court of Criminal Appeals itself in 2007 in *Roberts v. State.* 221 S.W.3d 659, 662–65 (Tex. Crim. App. 2007); *see also Kiffe v. State*, 361 S.W.3d 104, 114–19 (Tex. App.— Houston [1st Dist.] 2011, pet. ref'd) (Jennings, J., concurring).

This panel questions whether the evidence in this case when viewed under Texas' traditional factual-sufficiency review, i.e., when viewed and weighed in a neutral light, as opposed to being merely viewed in the light most favorable to the prosecution, is factually sufficient to support Fisher's conviction. We also

11

acknowledge that, as Justice Jennings pointed out in his concurring opinion in *Kiffe*, our failure to address a defendant's question of fact constitutes a violation of the United States Constitution's guarantees of due process of law and the equal protection of the laws. *Kiffe*, 361 S.W.3d at 110–12 (Jennings, J., concurring).

Nevertheless, the majority in *Ervin* chose to answer Ervin's question of fact as a question of law by incorrectly applying the *Jackson* legal-sufficiency appellate standard of review and viewing the evidence in the light most favorable to the prosecution, as set forth in *Brooks*. *See Roberts*, 221 S.W.3d at 662–63 (recognizing that Texas intermediate appellate court may not "apply an incorrect standard [of review] by treating appellant's factual-sufficiency challenge as some other challenge"). Although this panel disagrees with that decision, until this Court subsequently overrules *Ervin*, we must nevertheless accept *Ervin* as binding precedent. *See Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex. 1964).

We overrule Fisher's first issue.

## II.     Lesser-Included-Offense Instruction

In his second issue, Fisher alleges that the trial court erred in failing to sua sponte include an instruction in the charge on the lesser-included offense of theft, citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984 & 1985). This use of *Almanza* was explicitly rejected by the Court of Criminal Appeals in *Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010) (holding trial court had no

12

duty to sua sponte instruct jury on lesser-included offense and that jury instruction on lesser-included offense was not "applicable to the case" unless defense requested its inclusion in jury charge).

We overrule Fisher's second issue.

## III.   Ineffective Assistance

In his third issue, Fisher argues that his trial attorney was ineffective because he failed to request a jury instruction on the lesser-included offense of theft. Assuming without deciding that Fisher was entitled to an instruction, we conclude that he has not satisfied the *Strickland* test for ineffective assistance because he has failed to establish that he suffered harm as a result of his trial counsel's alleged errors. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064–65 (1984).

Theft is a lesser-included offense of both robbery and aggravated robbery. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2012). The only difference between the statutory elements of theft and robbery is that the latter also requires a greater culpable mental state (i.e., intentionally, knowingly, or recklessly causes bodily injury to another or threatens or places another in fear of imminent bodily injury or death in the course of committing a theft). *See* TEX. PENAL CODE

13

ANN. § 29.02(a) (West 2010). The only difference between robbery and aggravated robbery is the latter's requirement of an aggravating factor (e.g., the use of exhibition of a deadly weapon). *Id.* at § 29.03(a)(2) (West 2010). Thus, robbery is an intervening lesser-included offense—one that requires more than theft, but less than aggravated robbery. *See also* TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006) (stating that offense is lesser-included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged"). In order to find Fisher guilty of theft in this case, the jury had to have had reasonable doubt as to whether Fisher (1) intentionally and knowingly threatened Rosas or placed him in fear of imminent bodily injury or death, and (2) used or exhibited a deadly weapon in the commission of the offense.

The harm from the failure to instruct the jury on a lesser-included offense "stems from the potential to place the jury in the dilemma of convicting for a greater offense in which the jury has reasonable doubt or releasing entirely from criminal liability a person the jury is convinced is a wrongdoer." *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005). Here, the jury was instructed on both aggravated robbery and robbery. If the jury had reasonable doubt as to Fisher's use or exhibition of a deadly weapon, the jury could have convicted him of robbery. The jury's rejection of the lesser-included offense of robbery indicates

14

that the jury believed that Fisher used or exhibited a deadly weapon, and therefore, was guilty of the greater charged offense of aggravated robbery. The jury's rejection of the intervening-lesser-included-offense of robbery renders the trial counsel's failure to request an instruction on theft—a lesser-included-offense of both robbery and aggravated robbery—harmless. *See Masterson*, 155 S.W.3d at 171–72 (holding jury's rejection of intervening lesser-included offense in that case rendered trial court's denial of requested instruction harmless).

We overrule Fisher's third issue.

## Conclusion

We affirm the trial court's judgment.

Jim Sharp
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. TEX. R. APP. P. 47.2(b).

15