**Opinion issued August 28, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## Nos. 01-13-00652-CR, 01-13-00653-CR, & 01-13-00654-CR

————————————

**NOAH LEE NAVA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 10th Judicial District Court**
**Galveston County, Texas**
**Trial Court Case Nos. 11CR2478, 11CR2494, & 11CR2495**

---

## MEMORANDUM OPINION

After a jury convicted Noah Lee Nava of aggravated kidnapping[1] and two

---

[1]     *See* TEX. PENAL CODE ANN. § 20.04(b) (West 2011).

counts of aggravated robbery,[2] the trial court assessed his punishment at fifteen, twenty-five, and fifteen years' confinement, respectively. Appellant's sole point of error on appeal contends that the evidence is insufficient to positively identify him with respect to any of the charged offenses. We affirm.

## Background

On the night of July 23, 2011, Kevin Johnson was robbed at gunpoint in the parking lot of his apartment complex by one man wearing a paintball mask and another man who, together, wrested Johnson's hands behind his back, forced him to his knees, emptied his pockets, and shoved him in the back seat of his own car and told him to keep his eyes shut.

Initially, one of the men drove Johnson's car and the other followed in another car, but they subsequently pulled over, bound Johnson's hands and feet with duct tape, covered his mouth with tape, and put what Johnson thought was a towel around his head before getting back in the cars and driving Johnson onto a beach where they dumped him after discussing whether to kill him.

Johnson heard one of them say, "Let's just kill this motherfucker" before they both got into Johnson's car and drove away. After lying on the beach for at least thirty minutes, Johnson was able to loosen the duct tape binding his hands, free himself, and get help. In his statement to the responding officers, Johnson first

---

[2]     *See* TEX. PENAL CODE ANN. §§ 29.02(a), 29.03(a) (West 2011).

described his assailants as an Hispanic or white male, approximately 6'1" tall, and a black male, but later clarified that the first robber was Hispanic or Latino, not white. Johnson also described the weapon used by the Hispanic male as a silver nine-millimeter gun with a black grip. The officer discovered the duct tape used to bind Johnson and a white shirt that had been tied around his head nearby. The evidence was collected and later submitted for DNA analysis.

Within hours of Johnson's kidnapping and robbery, two men robbed the Dickinson branch of Texas First Bank. Beatrice Guerrero, the lobby services supervisor, testified that a man wearing pantyhose over his head, dressed in a dark sweater and blue jeans entered the bank carrying a skinny long-barreled gun, announced that the bank was being robbed and ordered everyone to get down on the floor. Shortly afterwards, an African-American male wearing a lighter shirt, gloves, and pantyhose over his head entered the bank with a gun. The man with the long-barreled gun jumped over the teller counter, and Jeremy Winston, a bank employee, began filling the robber's bag. After the robbers fled, Guerrero called 9-1-1 to report the robbery. She described the getaway car as a blue Toyota Corolla and was able to provide a partial plate number. Guerrero described the first gunman with the skinny long-barreled gun as being either Hispanic or white.

Dickinson Police Department Officer Jeffrey Peterson testified that when he reviewed the bank's video surveillance, he noted that the first robber who jumped

3

over the counter was an Hispanic or white male. He thought it odd that the gunman who had jumped over the counter turned his back on the 6'1", 200 pound Winston, focusing instead on Winston's female co-worker. According to Officer Peterson, Winston appeared calm on the video during the entire robbery. Winston filled the Hispanic man's bag with more than $10,000, and the two men quickly left.

Officers soon thereafter found Johnson's stolen car, parked the wrong way in between two bayous and still running. Officers also found black shoes, a glove, a light-colored shirt, two pairs of dark pants, one of which contained a magazine clip for a semi-automatic gun in the pocket, a pair of pantyhose with the eyeholes cut in it, a ski mask, and two caps nearby. A dive officer found a long-barreled Rugger in one of the bayous.

During the course of the investigation, the officers, who were suspicious of Winston's calm demeanor during the robbery, discovered Facebook photos of Winston with appellant. Winston initially gave a description of the robbers but denied knowing either of them. However, when confronted with the Facebook pictures, he admitted that he and appellant were friends, and identified appellant as the Hispanic bank robber carrying the long-barreled gun and appellant's friend, Jonathan Price, an African-American male, as the other robber.

Winston testified that he had talked to appellant twice about a previous robbery of Winston's bank, that appellant told him that he was going to rob Winston's bank, and that appellant had asked him whether the bank used "bait money." Winston also testified that he called appellant hours after the robbery to confirm that he was one of the gunmen and to solicit an explanation for why appellant had done it. Winston testified that he asked appellant if he had robbed the bank, and appellant admitted that he had.

DNA analysis showed that neither appellant's nor Price's DNA could be excluded from the outside of the shirt that had been tied around Johnson's head; and appellant's DNA could not be excluded from the shirt's inside. Officers also learned that appellant's mother lived at the same apartment complex from which Johnson had been abducted. Johnson testified that the gun later found in appellant's closet looked like the one used by the Hispanic kidnapper.[3]

## Discussion

In his sole point of error, appellant contends that the evidence is insufficient, and that no rational trier of fact could have found beyond a reasonable doubt that he committed the crimes.

---

[3] This gun is distinct from the long-barreled Rugger used by the Hispanic gunman during the robbery and found by the police in the bayou.

### A. *Standard of Review*

We apply the same standard of review to a sufficiency-of-the-evidence challenge regardless of whether the appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 53–54 (Tex. App.–Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979), under which evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Evidence is insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard imbues to the fact finder the responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The determination of what weight to give testimonial evidence is within the sole province of the jury, as it turns on an evaluation of credibility and demeanor. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997); *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

### B. Applicable Law

Aggravated robbery requires that one intentionally or knowingly place another in fear of imminent bodily injury or death while using or exhibiting a

7

deadly weapon in the course of committing theft. *See* TEX. PENAL CODE ANN. §§ 29.02(a), 29.03(a) (West 2011). Aggravated kidnapping is committed when a person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense. *See id.* § 20.04(b).

A conviction may not rest upon an accomplice's testimony unless the testimony is "corroborated by other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2014). "It is not necessary that the corroborating evidence directly connect the defendant to the crime or that it be sufficient by itself to establish guilt; it need only tend to connect the defendant to the offense." *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The sufficiency of the corroborating evidence is evaluated by eliminating the accomplice testimony from consideration and then examining the remaining portions of the record for any evidence that tends to connect the defendant with the commission of the crime. *See Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001).

### C. Analysis

In his sole point of error, appellant does not dispute that the crimes occurred, but that it was he who committed them. Specifically, he argues that the evidence is insufficient to support the jury's finding because there is (1) no eyewitness testimony; (2) no DNA evidence; (3) no recent and unexplained possession of

8

property stolen during the offenses; and (4) no other conduct by appellant evidencing consciousness of guilt. Appellant argues that in the absence of such evidence, the jury could not have found him guilty of the charged offenses beyond a reasonable doubt.

### 1. Evidence of Bank Robbery

Winston, a friend of appellant's who appeared in Facebook photos with him, identified appellant as the Hispanic male carrying a long-barreled gun who had robbed the bank where Winston worked. Winston testified that he and appellant twice discussed a previous robbery of this bank, and that appellant had asked him whether the bank used "bait money." Winston further testified that appellant had admitted to him that he had committed the robbery.

Although standing alone, accomplice testimony is insufficient to support a conviction, *see* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2014), here, independent of Winston's testimony, there is ample corroborating evidence tending to connect appellant to the robbery.[4] Winston knew both appellant and Jonathan Price prior to the robbery—thus, the robber's favorable treatment of Winston during the robbery, along with Winston's calm demeanor during and afterwards, corroborate Winston's testimony that appellant and Price were the bank robbers.

---

[4] *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006) (noting circumstantial evidence is as probative as direct evidence in establishing guilt).

9

In addition, Johnson's description of appellant matched Guerrero's description, their descriptions having been further corroborated by the bank surveillance video depicting one of the gunmen as an Hispanic or white male, approximately 6'1" tall. Johnson's car was the getaway vehicle used in the bank robbery. This evidence supports the jury's conclusion that the robberies of Johnson and the bank were committed by the same two men.

## 2.  Evidence of Robbery and Kidnapping of Johnson

Contrary to appellant's assertion, his DNA was found on the shirt used to bind Johnson.[5] In addition to the DNA evidence, the jury also heard evidence that appellant's mother lived at the same apartment complex where Johnson lived and from which he was abducted. Further, in his statement to officers, Johnson described his assailants as an Hispanic male, approximately 6'1" tall, and a black male—this description matched Winston's description of the bank robbers. The car in which appellant and Price fled from the bank robbery—which Guerrero described as a blue Toyota Corolla and for which she provided a partial license plate number—was identified as Johnson's car. Johnson also testified that the gun

---

[5]     Appellant argues that his roommate, Price, had ample access and opportunity to take the shirt without appellant's knowledge. However, as fact finder, the jury is entitled to accept or reject any or all of the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We cannot substitute our judgment for that of the factfinder. *See Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

found in appellant's closet looked like the same gun used during the robbery and kidnapping. *See Powell*, 194 S.W.3d at 507.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant was the person who committed all three of the charged offenses. *Laster*, 275 S.W.3d at 517. Finding the evidence legally sufficient to support appellant's convictions, we overrule his point of error.

## Conclusion

We affirm the trial court's judgment.


Jim Sharp
Justice


Panel consists of Justices Keyes, Sharp, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

11